ARK. BAR ASSN. *v.* BLOCK.

.5-1696                                                    323 S. W. 2d 912

Opinion delivered April 27, 1959.

[Rehearing denied June 1, 1959]

*Gentry & Gentry,* for appellant.

*Warren & Bullion,* for appellee.

J. SEABORN HOLT, Associate Justice. This case involves the alleged unlawful practice of law by appellees, and other similarly situated, and comes to this court on the following agreed statement of facts:

"It is stipulated by and between the plaintiffs and the defendants in the above styled cause of action that the following facts shall be considered by the Court in determining the issues involved in this cause.

## I

"The Bar Association of Arkansas is a voluntary, unincorporated association composed of lawyers comprising most of the practicing lawyers of the State of Arkansas. The plaintiffs have filed this action as officers of the Bar Association of Arkansas and individually as licensed attorneys of Arkansas. This is a class action on behalf of all the members of the Bar of the State of Arkansas.

## II

"This action was brought against the defendants as members of a class of real estate brokers and salesmen licensed under the laws of the State of Arkansas, and is intended to apply equally to all members of said class and is not an individual action directed solely toward the defendants.

## III

"The Arkansas Real Estate Association is a voluntary unincorporated association composed of persons engaged in the real estate business in the State of Arkansas and has intervened in this action as representatives of the class which it represents. The Pulaski County Bar Association is a voluntary unincorporated association composed of practicing lawyers in Pulaski County, Arkansas, and has intervened in this action as a class intervention in behalf of the class which it represents.

## IV

"The Statutes of the State of Arkansas do not define the term 'practice of law'; however, they do provide that no person may practice law in the State of Arkansas without first having obtained a license to do so.

## V

"The Statutes of the State of Arkansas provide that no person may engage in the real estate business in the State of Arkansas without having first obtained a license to do so under the Real Estate License Law.

## VI

"The practice of completing printed forms of instruments incidental to the completion of real estate transactions in which a real estate broker has an interest as broker has been wide spread and prevalent in the State of Arkansas for a number of years and is in practice now and the said real estate brokers intend to continue said practice in the future.

## VII

"The real estate brokers, in transactions in which they act as broker, use standardized and approved prepared forms of instruments hereinafter listed, and complete them by filling in the blank spaces to show the real estate transaction.

"The said instruments are:

1. Warranty Deeds;
2. Disclaimer Deeds;
3. Quitclaim Deeds;
4. Joint Tenancy Deeds;
5. Options;
6. Easements;
7. Loan Applications;
8. Promissory Notes;
9. Real Estate Mortgages;
10. Deeds of Trust;
11. Assignments of leases or rentals;
12. Contracts of Sale of Real Estate;
13. Releases and Satisfactions of Real Estate Mortgages;
14. Offers and Acceptances;
15. Agreements for the sale of real estate;
16. Bills of Sale;

17. Contracts of Sale;

18. Mortgages;

19. Pledges of personal property;

20. Notices and Declarations of Forfeiture;

21. Notices requiring strict compliance;

22. Releases and discharges of mechanic's and materialmen's liens;

23. Printed forms approved by attorneys, including the various forms furnished by title insurance companies to defendants for use by defendants as agents of title insurance companies; and

24. Acting as closing agent for mortgage loans and completing by filling in the blanks therein with factual data such instruments as are furnished to them and are necessary and incidental and ancillary to the closing of the transaction between the mortgagee for whom they act as agent and the mortgagor.

25. Leases.

## VIII

"The real estate broker receives a commission for his participation in the real estate transaction as real estate broker, but no separate charge is made by the real estate broker for the completion of the blank forms of instruments which he prepares in the closing of a real estate transaction in which he is participating as broker.

## IX

"The forms used by the defendants have been previously approved by attorneys and have been previously prepared, save for the blank spaces remaining thereon, which the defendants complete as above set out. The selection of the type of instrument form to be used in the closing of the transaction is made by the broker from information elecited from the other parties to the transaction and in accordance with their desires.

"In selecting the type of form to be used in any transaction, the real estate broker consults with the other parties to the transaction and follows their expressed desire as to the kind of transfer, terms, duration of payment, interest, *etc.*

## X

"The defendants prepare no instruments in transactions in which they are not interested parties as brokers and do not claim the right to prepare instruments or complete printed forms of instruments for other parties where they are strangers to the transaction.

## XI

"The defendants do not render opinions as to titles, nor the condition of titles of the properties which are involved in the transaction, but refer the other parties to the transaction to their respective attorneys in the event a question of title is raised".

On a hearing, the trial court held that the activities of appellees in preparing the various instruments above listed "as an incident to real estate transactions which they are handling" did not constitute the practice of law in Arkansas. We have concluded that in so holding the court erred. Simplified, the question presented is whether the admitted activities of appellees constitute the practice of law. We hold that such activities do constitute the practice of law as to every one of the instruments itemized above except as to No. 14, that of "Offers and Acceptances". It is undisputed that the appellees here are either persons who are not licensed to practice law, or corporations which cannot be licensed in Arkansas to practice law directly or through employees who are lawyers. Research of authorities by able counsel and by this court has failed to turn up any clear, comprehensible definition of what really constitutes the practice of law. Courts are not in agreement. "We believe it is impossible to frame any comprehensive definition of what constitutes the practice of law. Each case must be decided upon its own particular facts. . . . The practice of law is difficult to define. Perhaps it does not ad-

mit of exact definition," *Rhode Island Bar Association* v. *Automobile Service Association,* (1935), 55 R. I. 122, 179 A. 139, 100 A. L. R. 226.

The Supreme Court of Errors of Connecticut, in an opinion (April 15, 1958), in the case of *State Bar Association of Connecticut, et al* v. *The Connecticut Bank and Trust Company,* 145 Conn. 222, 140 A. 2d 863, which we think sound and well reasoned, used this language: "The practice of law is open only to individuals proved to the satisfaction of the court to possess sufficient general knowledge and adequate special qualifications as to learning in the law, and to be of good moral character. A dual trust is imposed on attorneys at law. They must act with fidelity, both to the courts and to their clients. They are bound by canons of ethics which are enforced by the courts. The relation of an attorney to his client is preeminently confidential. It demands on the part of the attorney undivided allegiance, a conspicuous degree of faithfulness and disinterestedness, absolute integrity and utter renunciation of every personal advantage conflicting in any way, directly or indirectly, with the interest of his client. Only a human being can conform to these exacting requirements. Artificial creations, such as corporations or associations, cannot meet these prerequisites and, therefore, cannot engage in the practice of law. The practice of law consists in no small part of work performed outside of any court and having no immediate relation to proceedings in court. It embraces the giving of legal advice on a large variety of subjects and the preparation of legal instruments covering an extensive field. Although such transactions may have no direct connection with court proceedings, they are always subject to subsequent involvement in litigation. They require in many aspects a high degree of legal skill and great capacity for adaptation to difficult and complex situations. No valid distinction can be drawn between the part of the work of the lawyer which involves appearance in court and the part which involves advice and the drafting of instruments. The work of the office lawyer has profound effect on the whole scheme of the administration of justice. It is performed with the possibility

of litigation in mind, and otherwise would hardly be needed. It is of importance to the welfare of the public that these manifold customary functions be performed by persons possessed of adequate learning and skill and of sound moral character, acting at all times under the head of trust obligation to clients which rests upon all attorneys. The underlying reasons which prevent corporations and associations, as well as individuals other than members of the Bar, from appearing before the courts apply with equal force to the performance of these customary functions of attorneys and counsellors at law outside of the courts'', in re *Opinion of the Justices,* 289 Mass. 607, 613, 194 N. E. 313.

It is obvious therefore that the practice of law is not confined to services by a licensed attorney in a court of justice, but also includes any services of a legal nature rendered outside of courts and unrelated to matters pending in the courts. In Re *Duncan,* 83 *S. C.* 186, 65 S. E. 210, the Supreme Court of South Carolina said: ''It is too obvious for discussion that the practice of law is not limited to the conduct of cases in court. According to the generally understood definition of the practice of law in this country, it embraces the preparation of pleadings and other papers incident to actions and proceedings on behalf of clients before judges and courts and in addition, conveyancing, the preparation of legal instruments of all kinds, and, in general, all advice to clients and all action taken for them in matters connected with the law. An attorney at law is one who engages in any of these branches of the practice of law''.

It seems to us that since the greater part of a lawyer's work is performed in his office, it is certainly most important that such office work be performed by persons trained in the law and subject to court discipline. The hazards to the public are reduced to a minimum in court proceedings ''where the proceedings are public and the presiding officer is generally a man of judgment and experience. * * * Not so, in the office. Here the client is with his attorney alone, without the impartial supervision of the judge. Ignorance and stupidity may here create damage which the courts of the

land cannot undo'', *People* v. *Alfani* (1919), 227 N. Y. 334, 125 N. E. 671.

The Supreme Court of Illinois in the case of *People* v. *Peoples Stockyards State Bank* (1931), 344 Ill. 462, 176 N. E., 901, expressed a similar view in this language: ''It is just as essential to the administration of justice and the proper protection of society that unlicensed individuals should not be permitted to prey upon the public in that sphere (office practice) of the practice of law as it is with respect to proceedings in the courts. It is no less an usurpation of the functions and privileges of an attorney and an affront to the court having sole power to license attorneys, for one not licensed as such to perform the services of an attorney outside of court procedures''.

The Supreme Court of Washington in the case of *Washington State Bar Association* v. *Washington Association of Realtors* (Wash. 1953) 41 Wash. 2d 697, 251 P. 2d 619, used this language: ''* * * Any legal form must be adapted skillfully to the transaction for which it is used, so that it expresses the agreement of the parties and defines their rights and obligations. Doing this is work of a legal nature and, when it is done by one unqualified, we not only cannot condone its continuance, but we must act to prevent it, whether or not it is done for compensation'', and in the case of *People* v. *Schafer* (1949), 404 Ill. 45, 87 N. E. 2d 773, the Supreme Court of Illinois said: ''With reference to preparing deeds, notes, mortgages and contracts in real estate transactions, respondent seems to consider those acts as being more or less mechanical and routine, requiring no legal knowledge or skill. Many titles are complex and complicated. They have grown more so from time to time and will not likely become less complex in the future. Those who prepare instruments which affect titles to real estate have many points to consider. A transaction which at first seems simple may upon investigation be found to be quite involved. One who merely fills in certain blanks when other pertinent information should be elicited and considered is rendering little service, but is acting in a manner calculated to produce trouble. When filling in

438

blanks as directed, he may not by that simple act be practicing law, but if he elicits the proper information and considers it, and advises and acts thereon, he would in all probability be practicing law. In other words, if his service does not amount to the practice of law, it is without material value; but if it is of material value, it would likely amount to the practice of law. The public should be protected from falling into the hands of one not skilled in the laws of conveyancing when seeking advice or service having to do with real estate titles''.

As indicated, we hold that the preparation of any of the instruments here involved, or any other instruments involving real property rights for others, either with or without pay, save and except instrument No. 14 above, constitutes the practice of law in this state. Obviously instruments of ''Offers and Acceptances'' contemplate the subsequent preparations of a deed to the property involved, and possible related instruments such as mortgages, leases, easements, *etc.*, to complete the transaction which, we hold, only a licensed lawyer equipped with requisite legal training, knowledge and skill could prepare.

Accordingly, the decree is reversed with directions to enter a decree consistent with this opinion.