BEACH ABSTRACT & GUARANTY CO. v. BAR ASSN. OF ARK.

5-1789                                    362 S. W. 2d 900

Opinion delivered April 27, 1959.

[Rehearing denied September 21, 1959]

*Catlett & Henderson,* for Beach Abstract & Guaranty Co.; *Rose, Meek, House, Barron & Nash,* for Appellant, Little Rock Abstract Co.

*Gentry & Gentry; Of Counsel: John A. Fogleman, Eugene A. Matthews, John H. Lookadoo, J. M. Smallwood, Max B. Reid, Lamar Williamson, Terrell Marshall, E. A. Henry, Joe C. Barrett,* for appellee.

JIM JOHNSON, Associate Justice. This suit was instituted by appellee Bar Association of Arkansas, acting through its proper committee (joined by the local Bar Association of Pulaski County) praying a declaratory judgment holding that the conduct and procedure of appellants, Beach Abstract & Guaranty Co., *et al.,* in certain enumerated instances are unlawful and constitute unauthorized practice of law.

After hearing testimony relative to certain activities on the part of the appellants alleged to constitute unlawful practice, the Chancellor sustained appellees' contentions and in addition to rendering a declaratory judgment against appellants, the court also enjoined them from further engaging in such alleged unauthorized practice. From this decision comes this appeal.

The appellants have set out four separate and distinct grounds upon which they rely for a reversal. However, in view of the disposition which we hereafter make of this case, we deem it unnecessary to discuss these points separately or in detail.

The facts are substantially undisputed. The trial court's exceptionally well written findings of facts are as follows:

"The defendants, Beach Abstract & Guaranty Company and Little Rock Abstract Company, are corporations duly organized and existing under and by virtue of the laws of the State of Arkansas, having their principal offices in the City of Little Rock, Pulaski County, Arkansas, and in addition to usual and ordinary business powers are organized for the specific purposes and are duly authorized to operate and maintain abstract of title plants, and are authorized to and are engaged in the preparation of abstracts of title, the solicitation and issuance of title insurance policies as general agents for title insurance companies, and in acting as escrow agents in connection with insuring titles and in closing real estate sales. Neither defendant has been, nor can be, admitted to the practice of law in this State.

"The defendant companies, and each of them, acting by and through persons employed by them, in connection with the conduct of their several businesses and in connection with transactions in which the said companies, as such, have no direct interest, have been and are regularly and continuously drafting some or all of the instruments and performing some or all of the functions for their numerous clients, patrons and customers as hereinafter enumerated, to-wit:

"(a) Drafting and preparation of warranty deeds, disclaimer deeds and quitclaim deeds.

"(b) Drafting and preparation of promissory notes, real estate mortgages, real estate purchase contracts and related instruments.

"(c) Drafting and preparation of forms of agreement for the sale of real estate, chattels, and choses in action.

"(d) Drafting and preparation of mortgages and pledges of personal property.

"(e) Drafting and preparation of forms of conveyances naming husband and wife as grantees.

"(f) Drafting and preparation of bills of assurance, dedication instruments, and tract and sub-division restrictions.

"(g) Drafting and preparation of escrow instructions, setting forth agreements between buyers and sellers, and the rights and liabilities of buyers and sellers.

"(h) Drafting and preparation of affidavits of completion of improvements, affidavits of marital status and heirship, and various and sundry additional forms of affidavits and other instruments to remove clouds and perfect titles.

"The drafting and preparation of the instruments and the performance of the functions hereinabove enumerated was done for the most part in connection with escrow services and the insuring of titles. No charge is made for the drafting and preparation of the instruments other than that the defendants receive for their escrow services a compensation which is based upon the dollar volume of the transaction; and where their services are utilized in connection with the issuance of a policy of title insurance the only compensation received is that charged for issuance of such a policy; and in the case of the defendant Little Rock Abstract Company such compensation is fixed without reference to the necessity, if any, for the drafting and preparation of the instruments above described. Insofar as the defendant, Little Rock Abstract Company, is concerned, the drafting the preparation of instruments was limited to the filling in of printed forms, which it did not prepare, and in each instance, whether done by either of the defendants, said forms were filled in only by inserting data from information and directions furnished them by owners, real estate brokers, mortgagees, or others, for whom they were acting. In certain instances the mortgagees for whom the defendants act furnish to the defendants the specific printed forms which they direct be used and such forms thus furnished are filled in by defendants from data supplied by the mortgagee.

"The Court further finds that in addition to the foregoing activities, the defendants are corporate agents for title insurance companies and as such agents, regularly and continuously solicit title insurance business, determine the state of the title, and, if deemed by them to be defective, draft and procure the execution of whatever instruments they deem are necessary to make such titles insurable. In determining the insurability of title, the defendants look to their records and to abstracts if available. The defendant, Little Rock Abstract Company, determines the state of the title for itself, as it has full authority as general agent to issue policies. The defendant, Beach Abstract & Guaranty Company, for the most part upon opinions of attorneys as to the state of the title, or upon occasion on its own determination as to the risk, issues policies of title insurance placing such policies in effect by counter-signatures under its authority as General agent, and reports the issuance to its principal. By contract with its principal, the defendant, Beach Abstract & Guaranty Company, in the event of a claim of loss or loss under a title insurance policy it has issued as General Agent upon its countersignature must pay the first $150 of any loss, or expense in defending a claim of loss, and 10 per cent of the total loss, or expense of defending a claim of loss, such liability being limited, however, to the total sum of $1,000."

The learned Chancellor concluded as a matter of law that the activities as heretofore set out in his findings of facts constituted unauthorized practice of law, whether done in connection with an escrow business or in connection with rendering title to property insurable. It is universally held that the power to regulate and define the practice of law is a prerogative of the judicial department as one of three divisions of government. This is especially true in this state by virtue of Amendment No. 28 to our Constitution which reads:

"The Supreme Court shall make rules regulating the practice of law and the professional conduct of attorneys."

The awareness of the grave and delicate responsibility resulting from this constitutional mandate necessitates our considering the case at bar in two aspects: (1) The conduct of an abstract business; and (2) The conduct of a title insurance agency.

*Abstract Business.* The questions presented here relative to the conduct of an abstract business are substantially the same as the questions presented in the case of *Arkansas Bar Association, et al* v. *Sam Block, et al,* 230 Ark. 430, 323 S. W. 2d 912, which is being handed down today. Due to the holding in that case we deem it unnecessary to discuss in this opinion the same subject matter that is covered so adequately in that case except to add that the same provisions that apply to the real estate companies also apply to abstract companies. We are unable to see why the rules governing abstracting activities should not also govern appellants activities relative to escrow agreements.

*Title Insurance Agencies.* A careful review of the facts relative to title insurance agencies make it abundantly clear that title insurance is written by the insurance company only after its agents have satisfied themselves that the title is insurable. This satisfaction is a result of a check of the abstract or records by the agents of the company and in many cases after substantial curative work has been done by its agents. It is contended by appellants that this work is done incidental to their own business and without charge. The record reflects that it is true that the title insurance agents do have a contract with the insurance company to indemnify such company for a limited amount of whatever loss might be sustained on insurance policies issued through the agents. It is further true that no listed charge, as such, is made for the performance of these services. However, it is admitted that a deduction or refund is given to the insurance applicant who provides his own attorney in the performance of the functions ordinarily done by the insurance agent. Relative to the compensation theory, we agree with the Supreme Court of Nebraska when it

said in *State, ex rel, Wright* v. *Barlow,* 131 Neb. 294, 268 N. W. 95 (1936):

"It is a matter of common knowledge that attorneys are appointed by the federal courts to defend indigent persons, charged with crimes in such courts, and that they render such service without compensation. It can scarcely be said that the defense of a person charged with a crime in a federal court is not the practice of law. It might as well be said that a surgeon who performs, without fee or reward, a tonsillectomy or appendectomy is not practicing surgery."

And as to the theory that the agency is doing business for itself, or performing legal services incidental to its business, the supreme Court of Nevada stated our view in the case of *Pioneer Title and Insurance Company* v. *State Bar of Nevada, et al.,* 326 P. 2d 408, when it said:

". . . The legal services provided by the title company were, it is true, incidental to its business. That incidence, however, cannot be said to partake of the practical necessity which we regard as essential, if an exception is to be made in the public interest. Furthermore, it cannot be said that the legal profession is unable to provide the necessary legal services. The very procedures followed by the company disprove this. The title company was, then, engaged in unauthorized practice of law."

Therefore, we conclude that title examination and curative work, when done for another, constitutes the practice of law in its strictest sense and has long been considered as such.

This prohibition by us against others than members of the Bar of the State of Arkansas from engaging in the practice of law is not for the protection of the lawyer against lay competition but is for the protection of the public. The rights bestowed upon citizens of this country by the law and those rights inherent in the citizenship are the gauge of our freedom and of our civilized prog-

ress. They must be prized as such and the reciprocal obligation to honor the rights of others must be respected. Due respect for these rights and obligations requires that at all times they be susceptible of definition. This proposition lies at the very foundation of our system of law. The public interest, therefore, requires that in the securing of professional advice and assistance upon matters affecting one's legal rights, one must have assurance of competence and integrity and must enjoy freedom of full disclosure, with complete confidence in the undivided allegiance of one's counselor in the definition and assertion of the rights in question.

It is to meet the requirements of public interest that high standards of training and competence are fixed for those who would practice law, and that they practice under a strict code of professional ethics and are made answerable to the courts as court officers for the manner in which they meet their professional obligations. The legal profession has, through acceptance of its obligations, traditionally become imbued with a spirit of public service.

The bench and bar may not lightly disregard these public obligations. Nor, in default of duty, may they casually permit the public to be led to rely upon the counselling, in matters of law, of persons not subject to the standards and discipline of an attorney as imposed by law for the public protection. However, in view of what we have already said, we feel that it was not necessary for the Chancellor to issue an injunction against appellants, the declaratory judgment being sufficient.

In accordance with what we have said above, with the exception noted, the decision of the trial court is affirmed.

Modified and affirmed.

GEORGE ROSE SMITH, J., not participating.