**Cody FOWLER et al., Plaintiffs,**

**v.**

**W. Willard WIRTZ, as Secretary of Labor of the United States of America, Defendant.**

**Civ. No. 608–62–M.**

United States District Court
S. D. Florida,
Miami Division.
Sept. 9, 1964.

See, also, 34 F.R.D. 20.

Paul & Sams, Miami, Fla., for plaintiffs.

John W. Douglas, Asst. Atty. Gen., William A. Meadows, Jr., U. S. Atty., Aaron A. Foosaner, Asst. U. S. Atty., Harland F. Leathers, Atty., Dept. of Justice, Charles Donahue, Sol., James R. Beaird, Associate Sol., Beverley R. Worrell, Regional Atty., U. S. Dept. of Labor, of counsel, for defendant.

FULTON, District Judge.

The Plaintiffs are attorneys practicing law in Florida, and the Defendant, as. Secretary of Labor of the United States,. is charged with enforcement of the provisions of the Labor-Management Reporting and Disclosure Act of 1959 (73 Stat. 519, 29 U.S.C. § 401 et seq., hereinafter referred to as "the Act").

This cause was initiated by the Plaintiffs upon the complaint that Defendant.

had attempted to compel Plaintiffs to file certain reports allegedly required by the Act. The Plaintiffs, as attorneys, requested the declaration of their rights under the circumstances and in particular that reports were not required of them. After motions the Defendant filed his answer, as well as a counterclaim to require Plaintiffs to file the subject reports. Plaintiffs filed their reply to the counterclaim, and the issue was thus joined. Each of the parties has filed a Motion for Summary Judgment.

Defendant Secretary demanded that Plaintiffs file the reports specified in Section 203(b) of the Act because the Plaintiffs allegedly, pursuant to an agreement or arrangement with an employer (as defined in such Section) undertook activities an object of which was to persuade employees as to the manner of exercising their rights to organize, or to supply an employer with information concerning the union activities of his employees. The Plaintiffs contend that the Act is not applicable to them because of any activities shown in this case to have been undertaken by them on behalf of their clients. They contend further that if the Act were applied to them, it would be unconstitutional.

Defendant Secretary contends that the filing of reports is required because of Plaintiffs' alleged activities on behalf of four employers:

1. L. D. Plante, Inc.;

2. Plant City Steel Corporation;

3. Speed Sprayer Plant of John Bean Division, Food Machinery Corporation; and

4. Guild Industries Manufacturing Corporation.

During 1960 and 1961, the years involved in this litigation, Plaintiffs rendered legal advice and services to these four employers in connection with administrative and judicial proceedings and represented them before courts and administrative agencies and in collective bargaining negotiations. During the same years, Plaintiffs provided and were paid for legal advice and services to labor law clients other than these four employers.

Certain factual matters are in dispute. Plaintiffs contend that the Court may not consider the Defendant's version of these facts, a complete summary of which is set forth in the Memorandum in Support of Defendant's Motion for Summary Judgment, because of the attorney-client privilege. For the purpose of this decision it is unnecessary to determine whether the attorney-client privilege bars consideration of these matters. The Court is of the opinion that Plaintiffs are not required to file the subject reports even if the Court accepts the version of these factual matters offered by the Defendant and resolves all factual disputes against Plaintiffs.

## L. D. PLANTE, INC.

At L. D. Plante, Inc., a union filed a petition with the National Labor Relations Board (the "Labor Board") for a representation election and thereafter filed with the Labor Board unfair labor practice charges upon which a complaint was issued by the Regional Director of the Labor Board. During the pendency of the representation proceedings, an attorney associated with Plaintiffs spoke as the Company's attorney to Company employees at a meeting with respect to legal matters in connection with the election proceeding and answered questions posed by employees. The employees were informed that this attorney associated with Plaintiffs was the Company's attorney.

## PLANT CITY STEEL CORPORATION

At Plant City Steel Corporation the Boilermakers' union had won a representation election. Objections to the election were filed by the Company and overruled by the Labor Board. The resulting certification of the union was tested by the Company, and, at times material herein, was pending on appeal in the United States Court of Appeals for the Fifth Circuit. During the pendency of this case, associates of Plaintiffs who were introduced to employees of the Company

at a meeting as attorneys of the Company, spoke to the employees concerning the legal effect of the organization of another union during the pendency of such appeal, and matters related thereto.

## SPEED SPRAYER PLANT

At Speed Sprayer Plant a union filed a representation petition, and an election was held in March, 1961, resulting in the certification of the union as bargaining representative for certain employees. Collective bargaining negotiations commenced resulting in a contract being signed in November, 1961. Prior to the holding of the election an associate of Plaintiffs, known by the employees to be an attorney for the Company, appeared and spoke at a meeting of employees of the Company answering questions posed by employees calling for a response as to legal issues.

## GUILD INDUSTRIES MANUFACTUR- ING CORPORATION

In August, 1960 a union filed an unfair labor practice charge against Guild Industries Manufacturing Corporation. In October, this union filed a representation petition. Additional unfair labor practice charges were later filed against the Company, as a result of which the Labor Board issued a complaint. In September or October, 1960, the Department of Labor conducted an investigation into the question of Plaintiffs' compliance with the Fair Labor Standards Act. Immediately prior to the date set for the representation election, the Union withdrew with the consent of the Labor Board. The Trial Examiner found that the Company had committed unfair labor practices. This conclusion was affirmed by the Labor Board and the Court of Appeals. Associates of Plaintiffs, having been introduced as and known to be the Company's attorneys conducted an investigation questioning certain employees of Guild orally and in writing with respect to the unfair labor practice charges filed against the Company and the Labor Board's complaint issued on these charges.

In each of the foregoing instances, the Plaintiffs, and their associates were acting openly as attorneys for the four employers, representing them on legal matters having to do with administrative or judicial proceedings or collective bargaining negotiations. In each instance, the employees of the companies involved were specifically advised and knew that the attorneys were acting as the attorneys for the respective companies. In each instance the matters under discussion and the activities of the Plaintiffs and their attorneys were activities of a legal nature performed in the course of the attorney-client relationship.

The pertinent portions of the Act are as follows:

"§ 203. * * * (b) Every person who pursuant to any agreement or arrangement with an employer undertakes activities where on object thereof is, directly or indirectly—

"(1) to persuade employees to exercise or not to exercise, or persuade employees as to the manner of exercising, the right to organize and bargain collectively through representatives of their own choosing; or

"(2) to supply an employer with information concerning the activities of employees or a labor organization in connection with a labor dispute involving such employer, except information for use solely in conjunction with an administrative or arbitral proceeding or a criminal or civil judicial proceeding;

shall file within thirty days after entering into such agreement or arrangement a report with the Secretary, signed by its president and treasurer or corresponding principal officers, containing the name under which such person is engaged in doing business and the address of its principal office, and a detailed statement of the terms and conditions of such agreement or arrangement.

Every such person shall file annually, with respect to each fiscal year during which payments were made as a result of such an agreement or arrangement, a report with the Secretary, signed by its president and treasurer or correspondent principal officers, containing a statement (A) of its receipts of any kind from employers on account of labor relations advice or services, designating the sources thereof, and (B) of its disbursements of any kind, in connection with such services and the purposes thereof. In each such case such information shall be set forth in such categories as the Secretary may prescribe.

"(c) Nothing in this section shall be construed to require any employer or other person to file a report covering the services of such person by reason of his giving or agreeing to give advise to such employer or representing or agreeing to represent such employer before any court, administrative agency, or tribunal of arbitration or engaging or agreeing to engage in collective bargaining on behalf of such employer with respect to wages, hours, or other terms or conditions of employment or the negotiation of an agreement or any question arising thereunder.

"(d) Nothing contained in this section shall be construed to require an employer to file a report under subsection (a) of this section unless he has made an expenditure, payment, loan, agreement, or arrangement of the kind described therein. Nothing contained in this section shall be construed to require any other person to file a report under subsection (b) of this section unless he was a party to an agreement or arrangement of the kind described therein.

"(e) Nothing contained in this section shall be construed to require any regular officer, supervisor, or employee of an employer to file a report in connection with services rendered to such employer nor shall any employer be required to file a report covering expenditures made to any regular officer, supervisor, or employee of an employer as compensation for service as a regular officer, supervisor, or employee of such employer.

"(f) Nothing contained in this section shall be construed as an amendment to, or modification of the rights protected by [§ 8(c) of the National Labor Relations Act]."

"§ 204. Nothing contained in this chapter shall be construed to require an attorney who is a member in good standing of the bar of any State, to include in any report required to be filed pursuant to the provisions of this chapter any information whch was lawfully communicated to such attorney by any of his clients in the course of a legitimate attorney-client relationship."

Defendant Secretary demanded that Plaintiffs file 30-day reports as to each of the four companies specified above and annual reports for the years 1960 and 1961 with respect to *all* of Plaintiffs' labor law clients. Defendant contends that the annual report is required to include information as to all labor law clients, even though Defendant concedes that Plaintiffs have engaged in reportable activities on behalf of only four of them. Defendant Secretary contends that with respect to each of the companies specified above, the Plaintiffs "pursuant to [an] agreement or arrangement" undertook reportable activities. Although he concedes that all activities of Plaintiffs took place while administrative, judicial or collective bargaining proceedings were occurring, he contends that Plaintiffs' activities did not constitute advice to the client or representation of the client *so as to activate the* exemption from reporting provided by Section 203(c).

Plaintiffs contend that their activities do not fall within the scope of the Act and its reporting requirements because they were acting openly as attorneys. They claim that the exemptions specifical-

ly written into the Act in Sections 203(b)(2), 203(c), and 204, apply to them and their actions; and if these provisions do not exempt their activities, they contend that the Act is invalid and unconstitutional. Plaintiffs further argue that reporting and disclosing the financial transactions with all their labor clients, not merely the four above-named, transgresses upon the rights of such other clients and of Plaintiffs as their attorneys, and is clearly not contemplated by the Act.

This is a case of first impression. It is a very important case, dealing as it does with reporting requirements created by a Federal statute with respect to lawyers engaged in the practice of law, with the resultant potential effect on or destruction of the attorney-client relationship. Involved here is the right to benefit of counsel without disclosure of the terms and nature of the relationship, and the inhibition which required reporting may have on securing legal assistance in matters and disputes in which an individual is involved. Any such inhibition may not be taken lightly. It may not be created by inference or by twisting ambiguities or by straining the meaning and purpose of a statute to reach that result.

The facts involved in this case have been carefully reviewed in the light of the language of the statute, the legislative history of the statute, and the applicable law. Although the Act contains provisions for criminal prosecution of a person who is required to file reports and willfully fails to do so, all that is here involved is a suit by Plaintiffs for a declaratory judgment to determine the application of the Act to them, and a counterclaim for civil enforcement of the Act. Therefore, the Court has determined not to strictly or rigidly interpret the statute, but rather to construe it broadly in the light of its purpose and in so doing rationalize the provisions of Sections 203 and 204 of the Act into a coherent whole.[1]

On this basis, the Court has concluded that the Act, properly construed, does not require the Plaintiffs to file any of the reports specified in the Act on account of any activities in which Plaintiffs have been shown to have been involved, even if all disputed factual issues concerning such activities are resolved in favor of the position taken by Defendant. Plaintiffs' activities are exempt from the reporting requirements of Section 203(b) of the Act by the express provisions of Sections 203(c) and 204 of the Act. Further, upon examining the overall purpose of the Act, the Court has concluded that the reporting requirements of Section 203(b) of the Act are not designed to reach the type of activities in which Plaintiffs engaged, in the first instance.

Since this conclusion is based on construction of the statute, a determination of the constitutional effect of the statute if applied to Plaintiffs is not required. However, the Court has substantial doubt as to the constitutionality of the Act if it could not be construed to exempt Plaintiffs' activities in this case.

*The Express Exemption of the Act*

▮ Section 203(c) of the Act creates an exemption from the reporting requirements of Section 203(b) of the Act on account of any activities in which Plaintiffs have been shown to have been involved. The activities of the Plaintiffs in this case were the activities of attorneys performing services as attorneys by reason of representing a client or agreeing to represent a client before a court or administrative agency or in collective bargaining. Clearly, "representing" an

---

1. One commentator in attempting to rationalize the provisions of Section 203(b) and 203(c), commented that "this is another example of the ambiguities produced by the inartistic draftsmanship which characterizes much of the statute". Aaron, The Labor Management Reporting and Disclosure Act of 1959, 73 Harv.L.Rev. 851, 890–891 (1960). This statute is hardly a model of legislative draftsmanship.

"employer" before an "administrative agency" is not limited to the appearance in the hearing room but includes all preparation for the hearing or representation of the employer in any other part of the administrative proceeding.

An attorney may be, and usually is, engaged to represent a party during the course of any such proceedings after they have been initiated. An attorney may well be, and frequently is, employed to represent a party prior to the commencement or initiation of such proceedings. The attorney's agreeing to represent the party, here the employer, in such proceedings commences his services in that regard. Both types of attorney's services are contemplated by and excluded by the provisions of Section 203(c) of the Act.

An unfair labor practice proceeding before the Labor Board does not commence with the complaint filed by the Regional Office of the Labor Board and conclude with the ultimate decision of the Labor Board. Rather, the proceeding is initiated by the filing by a private party of an unfair labor practice charge which, on development in the investigative state and prior to any formal hearing, may be processed, withdrawn or dismissed. See, generally, NLRB Statements of Procedure, Series 8, Sections 101.2–101.7, 29 C.F.R. Sections 101.2–101.7. Activities by the employer or his counsel during the investigation of any such charge may have some influence on the employees as to exercising their right to organize, but if the statutory exemption is to be at all meaningful, such collateral effect cannot be deemed to bring such activities within the scope of the reporting requirements.

Similarly, representation election proceedings under Section 9 of the National Labor Relations Act involve more than a formal hearing before the Labor Board. The representation proceeding is formally initiated by the filing of a representation petition (NLRB Statements of Procedure, Series 8, Section 101.17; 29 C.F.R. Section 101.17). However, depending upon prior investigation, an employer may be required to recognize a union as bargaining representative of its employees without any election at all, on an appropriate showing that such union represents a majority of the employees. See, e. g., N. L. R. B. v. Southeastern Rubber Mfg. Co., 213 F. 2d 11, 15 (5th Cir. 1954). Failure to do so will itself be grounds for an unfair labor practice proceeding under Section 8(a) (5) of the National Labor Relations Act. This preliminary determination of whether immediate recognition is necessary may require examination into the facts by the employer and his attorney. Other pre-election legal matters may include determination of an appropriate unit, including a representation hearing, challenges to voters, and the like. See generally NLRB Statements of Procedure, Series 8, Sections 101.17–101.20; 29 C.F.R. Sections 101.17–101.20. All these matters may require factual investigation and preparation by the attorney. In addition, all statements, actions, or non-actions of the employer in the election campaign are part of the representation proceeding, for these may be grounds for invalidating the election under the Labor Board's objection procedure (NLRB Rules and Regulations (Sec. 102.29; 29 C.F.R. Sec. 102.69), or for unfair labor practice proceedings under Section 8(a) (1) of the National Labor Relations Act. The attendance and participation of an attorney in all meetings with employees during the election campaign is the right of the client and may be necessary to full representation in connection with the representation proceeding. For the same reasons, the direct participation of the attorney may be necessary in advancing legal arguments directly to the client's employees as to the legal effects of one action or another. Indeed, should some person, not an attorney, undertake to perform these services, he would undoubtedly be engaged in the unauthorized practice of law.

Section 203(f) of the Act, which prohibits "modification of the rights" protected by Section 8(c) of the Labor Act, buttresses the conclusion that all

such matters are part of representation of the employer. That Section expressly reserves to the employer his right to express and disseminate to his employees "any views, argument, or opinion * * whether in written, printed, graphic, or visual form * * *" and, of course, when the employer wishes, in the exercise of this right (Blue Flash Express Inc., 109 NLRB 591 (1954), Joy Silk Mills, Inc., 85 NLRB 1263 (1949)), to present "views, arguments, or opinions" of a legal character, it is both proper and advisable that he do so through his attorney.

█ Plaintiffs are expressly exempted from the reporting requirements of Section 203(b) by reason of their activities in this case because of the explicit provisions of Section 203(c) of the Act. This section was obviously designed to exempt the activities of attorneys performing services as attorneys in connection with judicial or administrative proceedings. In all instances involved in this case, the activities of Plaintiffs may fairly be said to have been activities of attorneys performing services as attorneys during or in preparation for—and therefore by reason of—proceedings of a civil, judicial or administrative nature.

Section 204 of the Act confirms the exclusion from the reporting requirements of the Act activities occurring in performance of the normal attorney-client relationship, such as the activities of Plaintiffs here. This section was derived from a floor amendment to Senate Bill No. 1555 (the Kennedy-Ives Bill, which was the original basis of the Act). The following interchange on the floor of the Senate between Messrs. Goldwater and Kennedy is revealing:

"The Legislative Clerk. On page 54, between lines 13 and 14, it is proposed to insert the following new section: Sec. Nothing contained in this Act shall be construed to require an attorney who is a member in good standing of the bar of any State to include in any report required to be filed pursuant to the provisions of this Act any informa-tion which was lawfully communicated to such attorney by any of his clients in the course of a legitimate attorney-client relationship.

"MR. GOLDWATER. * * * The amendment specifically exempts from the reporting requirements of the bill any communication between an attorney and his client. I do not know how I can explain the amendment any more completely than that.

* * * * * *

"MR. KENNEDY. Mr. President, I am prepared to accept the amendment. As I understand, it is the amendment which takes care of the lawyers.

"MR. GOLDWATER. That is correct.

"MR. KENNEDY. It goes against my grain to accept the amendment, because no bar association in the United States, as of tonight, has moved against one lawyer who has come before the McClellan Committee and who has participated, in one way or another, in the improper practices which have been found.

* * * * * *

I will accept the amendment; and I hope it will encourage the bar associations of the United States to fulfill their responsibility in a more substantial way than they have so far on this particular problem of ethical practices.

* * * * * *

"MR. GOLDWATER. As a layman, I believe there should be a perpetuation of the sanctity of relations between attorney and client. I know that if I were involved in a situation in which an attorney was representing me, and a report had to be made, I would not want all of the intimate details of communications between the attorney and me to become public property.

"I agree with the Senator from Massachusetts that there have been cases in which the bar associations

could have moved against certain lawyers. I hope our little exchange tonight may provide the necessary motivation for that movement.

\* \* \* \* \* \*

"MR. KENNEDY. There is no doubt in my mind that the bill which was originally drafted by lawyers adequately protected them. Therefore, I do not feel that the amendment offered by the Senator from Arizona is wholly necessary. But in order that there may be no question about it I will accept the amendment." (Cong.Rec. 5889–5890 (daily ed. April 23, 1959)).

In remarking that lawyers were adequately protected by the bill as it then stood without amendment, Senator Kennedy was obviously alluding to Section 103(c) of Senate Bill No. 1555 as reported, which Section 103(c) became, verbatim, Section 203(c) of the Act. This view of Senator Kennedy is confirmed by reference to the Report of the Senate Committee on Labor and Public Welfare on Senate Bill No. 1555, prior to the Goldwater amendment.

"The committee did not intend to have the reporting requirements of the bill apply to attorneys and labor relations consultants who perform an important and useful function in contemporary labor relations and do not engage in activities of the types listed in section 103(b)." (S.Rep. No.187 on S.1555, 86th Cong., 1st Sess., 40 (1959), U.S.Code Cong. & Adm.News, p. 2356.[2]

Although Senator Kennedy did consider what became Section 204 of the Act to be mere surplusage, the Court concludes that the addition of this section confirms the clear purpose of Section 203(c) to exclude from the reporting requirements activities of attorneys performed as part of the attorney-client relationship is an administrative or judicial proceeding.

The Court can, therefore, find no indication in the Act of any intention to limit, in the exclusion from reporting, the normal scope of the attorney-client relationship. We may therefore look to established precedent to determine whether Plaintiffs' activities came within the normal scope of an attorney's activities during the course of representation of his client. Although "it is impossible to lay down an exhaustive definition of the 'practice of law' " (State Bar of Arizona v. Arizona Land Title & Trust Co., 90 Ariz. 76, 366 P.2d 1, 8–9 (1961), reh. den. 91 Ariz. 293, 371 P.2d 1020 (1962)) it is everywhere agreed that it "embraces much more than the conduct of litigation." (Land Title Abstract & Trust Co. v. Dworken, 129 Ohio St. 23, 193 N.E. 650, 653 (1934)), or "services by a licensed attorney in a court of justice" (Arkansas Bar Assn. v. Block, 230 Ark. 430, 323 S.W. 2d 912, 915 (1959) ), or the "preparation of pleadings, and other papers incident to any action or special proceeding \* \* \*" (Gazan v. Heery, 183 Ga. 30, 187 S.E. 371, 376 (1936)) and "actual appearance in court" (State ex rel. McKittrick v. C. S. Dudley & Co., 340 Mo. 852, 102 S.W.2d 895, 899 (1937)). Indeed, "The greater, more responsible, and delicate part of a lawyer's work is in other directions. \* \* \* mere skill in trying lawsuits, where ready wit and natural resources often prevail against profound knowledge of the law, is a relatively unimportant part of a lawyer's work." Land Title Abstract & Trust Co. v. Dworken, supra, 193 N.E. at p. 653. The "practice of law" includes not only the conduct of litigation and those activities which are "incidental and ancillary to appearance in court" (In re Ripley, 109 Vt. 83, 191 A. 918, 919 (1937)), as well as those activities which

2. Although Senate Bill No. 1555 is the specific progenitor of Sections 203(c) and 204 of the Act, I find that House Bills on the subject also show a clear intention to exempt activities coming within this same field. See Section 204 of H.R. 8400 (the Landrum Bill, which was eventually substituted on the floor of the House for the House Committee Bill), and Section 204, H.R. 8342 (the House Committee Bill), as reported.

the lawyer performs "acting professionally in legal formalities, negotiations, or proceedings by the warrant or authority of their clients" (People ex rel. Chicago Bar Assn. v. Goodman, 366 Ill. 346, 8 N.E.2d 941, 944 (1937)), but further encompasses the performances of "any act or acts, either in court or outside of court" for the purpose of determining, "obtaining or defending the rights of * * * clients under the law" (State ex rel. McKittrick v. C. S. Dudley & Co., supra, 102 S.W.2d at pp. 898–899), and includes "any services of a legal nature" even though "rendered outside of courts and unrelated to matters pending in courts" (Arkansas Bar Assn. v. Block, supra, 323 S.W.2d at p. 915). An attorney, by virtue of his retainer, has authority to "do on behalf of his client all acts, in or out of court, necessary or incidental to * * * the accomplishment of the purpose for which he was retained." 7 C.J.S. Attorney & Client, § 79. Since the practice of law includes "all action taken for [clients] in matters connected with the law" (Gazan v. Heery, supra, 187 S.E. at p. 376), it is held that it is the attorney's proper function to act "in a representative capacity in protecting * * * another person in the exercise of his legal rights and duties and in counseling, advising and assisting him in relation thereto." (In re Unauthorized Practice of Law in Cuyahoga County, Ohio App., 185 N.E.2d 489, 494 (1962)), and in fact that the practice of law includes "any sort of service * * * [which] requires the use of any degree of legal knowledge or skill" (People ex rel. Illinois State Bar Ass'n v. People's Stock Yards State Bank, 344 Ill. 462, 176 N.E. 901, 907 (1931)).

For the foregoing reasons the Court concludes that the express exemption from the reporting requirements of Section 203(b) of the Act created by Sections 203(c) and 204 of the Act covers all activities of the Plaintiffs in this case.

*Purpose of the Reporting Requirements*

■ The labor consultant reporting requirements of the Act found in Section 203(b) must be interpreted in the light of the purpose for which they were enacted, for "[a]ttention must always be given to what Congress sought to accomplish by the statute". (Billik v. Berkshire, 154 F.2d 493, 494 (2nd Cir. 1946)). "It is axiomatic that statutes are to be interpreted, whenever possible, to effectuate their underlying purpose and intention". (Monarch Life Ins. Co. v. Loyal Protection Life Insurance Co., 326 F.2d 841, 845 (2nd Cir. 1963), cert. den. 376 U.S. 952, 84 S.Ct. 968, 11 L.Ed. 2d 971 (1964)). "In the interpretation of statutes, the function of the courts is easily stated. It is to construe the language so as to give effect to the intent of Congress". (United States v. American Trucking Associations, 310 U.S. 534, 542, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940)).

The Congressional declaration of findings, purposes and policy is found in Section 2 of the Act. Section 2(b) sets forth the legislative findings:

> "(b) The Congress further finds, from recent investigations in the labor and management fields, that there have been a number of instances of breach of trust, corruption, disregard of the rights of the individual employees, and other failures to observe high standards of responsibility and ethical conduct which require further and supplementary legislation that will afford necessary protection of the rights and interests of employees and the public generally as they relate to the activities of labor organizations, employers, labor relations consultants, and their officers and representatives."

Section 2(c) of the Act provides that "Congress * * * finds and declares that the enactment of this Act is necessary to eliminate or prevent *improper practices* * * *." (emphasis added). The "recent investigations in the labor and management fields" referred to in Section 2(b) are the investigations of the McClellan Committee into vice and corruption and improper activities in the labor-management relations field.

■ It is apparent that the "activities" to which Section 203(b) of the Act has reference are the undisclosed unethical activities that are ingrained in the legislative history of this reform legislation going back to the Kennedy-Ives Bill of 1958, and which were uncovered by the McClellan Committee. It is clear that Section 203(b) of the Act was designed to remedy the primary evil of the labor consultant activities uncovered by the Committee, their *undisclosed nature*, with resultant and attendant corruption and breaches of trust.

The Act's primary purpose is to restrain espionage, bribery, the establishment of spurious unions, the supplying of labor spies for profit, and the use of such devices as "Morale surveys" for surveillance of union activities. The McClellan Committee investigation dealt with the "management-middleman" who had been successful in these fields because of the undisclosed nature of his operations. The employer reporting requirements of Section 203(a), in total effect, are designed to restrain two things: (1) bribery or "influence payments as to union officials",[3] and (2) outlays made to finance intentional unfair labor practices or undercover manipulations designed to deceive employees. Of the five subsections under Section 203(a), the first deals with payments of the first type, and the remaining four deal with payments of the second type. Section 203(b) deals solely with the second category. The union reporting requirements are complementary to Section 203(a).

As portrayed during the legislative investigation, the "labor consultant" who was a destructive force to proper labor-management relations was the hidden persuader—an elusive, shadowy figure who moves into and out of the company-union scene, selling his talents and connections and insidiously manipulating and destroying the employees' free choice of representatives. (See generally Report of Senate Committee on Labor and Public Welfare, S.Rep.No.187, 86th Cong. 1st Sess. (1959) 5–7; Report of House Committee on Education and Labor, H.Rep.No.741, on H.R.8342, 86th Cong. 1st Sess. (1959) 6–7; Senate Select Committee on Improper Activities in the Labor or Management Field, S.Rep. No.1417, 85th Cong., 2nd Sess. 256 (1957)). Congress apparently felt that the mere fact that such middlemen moved in the dark, working for management while portraying himself as the employee's friend, could mislead the employees in exercise of supposedly free choice. To solve this, the disclosure method was selected so that the employees could know and properly evaluate the interests of such persons.

If attorneys act as such proscribed hidden persuaders, rather than as attorneys for disclosed principals, then the reporting requirements of the Act are designed to bring such activities into light. But the Act was clearly not designed to reach activities which are already disclosed, for such disclosure is not required to enable the employees to know the interest of these persons. While the draftsmanship of the Act is far from being precise, the importance of the disclosure factor is implicit in all of its provisions. For example, Section 203(e) exempts all "regular" employees from the reporting requirement. This provision must be read to refer to regular *disclosed* employees, else the employer could easily evade all of the reporting requirements by simply adding undercover agents to his regular payroll.

The record is clear in this case that Plaintiffs represented themselves to be

---

3. See also the amendment to Section 302(b) of the Labor-Management Relations Act by Section 505 of the Act. This amendment makes it "unlawful" for any employer or any person who acts as a labor relations expert, advisor or consultant to an employer to pay, lend or deliver any money or thing of value to any representative of his employees, to any labor organization or officer or employee thereof; to any employee or group or committee of employees, to influence them; or to any officer or employee of a labor organization to influence its actions. It is further made unlawful to request or receive any such payments.

lawyers—nothing else—and that they fully disclosed the names of their clients and the purpose of their representation. There is not the slightest suggestion in the record that Plaintiffs acted in any manner other than openly and fully disclosing their interest, their relationship to their client, and their client's interest. Such activities are not reportable under the Act, when the Act is considered in its entirety. It is true that the reporting requirements imposed by Section 203(b) of the Act can be construed—when standing alone—as including all activities having any indirect persuasive or investigative effect, regardless of whether they were disclosed or undisclosed. But this overbroad interpretation of Section 203(b) can not be sustained in the face of the evident purpose of the Act, its legislative history, and the necessity of effectuating the intent of Congress to give some practical meaning to the exemption provided in Section 203 (c) of the Act.

■ The Court, therefore, concludes that Plaintiffs are not required to file any reports under the Act[4] on account of any activities in which Plaintiffs have been shown to have been involved.

### The Constitutional Implications

Since the Court has held that Section 203(b) of the Act does not apply to Plaintiffs on account of any activities in which Plaintiffs have been shown to have been involved, it is unnecessary to rule upon Plaintiffs' constitutional objections to the Act if applied to them. The constitutional implications of the statute if so applied are, however, disturbing.

---

4. Since the Court finds that Plaintiffs are not required to file reports, I need not pass on their subsidiary point that any annual report which they might be required to file should be limited to those clients as to whom 3-day reports would be required. Nevertheless an allusion to this matter is desirable to exhibit Defendant Secretary's strained interpretation of the entire Act. Defendant Secretary takes the position that if Plaintiffs shall take one action with respect to one client which is reportable then all services with respect to all clients during that year are reportable in the annual report, even though all such activities with respect to all other clients clearly fall within the terms of Section 203(c) of the Act even as interpreted by Defendant Secretary. To say the least, this interpretation plays havoc with the obvious purpose of Section 203(c) (as well as Section 204) to protect the attorney-client relationship from disclosure within the enumerated categories. This interpretation seems uniquely oppressive since it requires disclosure as to the relationship between Plaintiffs and clients, even if such clients have (in the light of the Defendant Secretary's published interpretation of the Act) required Plaintiffs not to engage in any activities for them which would exceed the interpretation of Defendant Secretary. Statutes must be construed with regard to the harm or benefit to be derived from their operation and the effect on the parties involved. People ex rel. Carter v. Rice, 135 N.Y. 473, 31 N.E. 921, 16 L.R.A. 836 (1892); Kreitlein v. Ferger, 238 U.S. 21, 35 S.Ct. 685, 59 L.Ed. 1184 (1915).

This interpretation of the Defendant Secretary reduces Section 203(c) of the Act to a mere truism—that nonreportable undertakings do not give rise to a duty to report. The labor consultant reporting requirements were to be read in *pari materia* with the employer reporting requirements of Section 203(a). See House Committee of Conference, H.R.Rep. No. 1147 on S. 1555, 86th Cong., 1st Sess. 32 (1959). The language of Section 203(c) is derived from Section 103(c) Senate Bill No. 1555. The Senate Bill contained no provision for annual reports. The language requiring annual reports in Section 203(b) was added on the Senate floor. Section 203(c), if read together with Section 203(b) before the addition of the annual report provision, shows clearly that the exemption of Section 203(c) was designed to be as broad as the reporting requirements of Section 203(b). It is inconceivable that, in amending Section 203(b) on the floor, the amenders intended to make the exemption less restrictive than the reporting requirements. This conclusion is reinforced by the provisions of Section 203 (d), which provide that the employer need not report any legal expenditures other than in connection with reportable activity. If the employer need not do so, then the labor consultant need not do so either.

If Section 203 of the Act were applied to Plaintiffs its validity under the First Amendment to the United States Constitution would be doubtful. Of course, Section 203(f) provides that nothing in Section 203 is to be construed as amending or modifying in any manner the rights protected by Section 8(c) of the Labor Act. This is merely a reaffirmation of the free speech guarantee of the Constitution. Cf. NLRB v. La-Salle Steel Co., 178 F.2d 829, 835 (7th Cir. 1949).

Section 203(b) of the Act is replete with ambiguous and uncertain terms. As an example, the section requires reporting by every person who "undertakes activities where an object thereof is, directly or indirectly * * *." to engage in the proscribed matters. The statute is totally vague as to the degree of substantiality which the "object" must reach in order to fall within the terms of the statute. It is unclear whether the statute would apply if the principal "object" related to preparation for an administrative proceeding, but a collateral "object" was something else. Nor is it clear whether the statute would apply if the collateral "object" was not the "object" at the time of preparation for the proceeding, but became an "object" later. The statute is just as indefinite in providing who is to decide what the "object" of the activity undertaken really is, nor how such determination would be made.

Although no criminal prosecution is involved here, one real concern which would face the Court if the constitutional objections of the Plaintiffs were directly before it would be the possibility that Plaintiffs as attorneys might hesitate to engage in activities perfectly proper within the meaning of the statute and necessary to the full representation of their clients, because of fear that this indefinite statute might be construed to require reporting of such activities. It is certainly a matter of concern to the Court that the attorney-client relationship might well be hamstrung by disclosure, particularly in the light of the Congressional efforts to protect this relationship. It is, after all, just to prevent disclosure that the attorney-client privilege exists at all.

The government's interest in obtaining disclosures must justify any deterrent effect which the disclosures may have upon the free exercise of constitutionally protected rights, and the government's interest in order to prevail in such circumstances, must be compelling. As the Supreme Court said in National Association for the Advancement of Colored People v. State of Alabama, 357 U.S. 449, 463, 78 S.Ct. 1163, 1172, 2 L.Ed.2d 1488 (1958):

"We turn to the final question whether Alabama has demonstrated an interest in obtaining the disclosures it seeks from petitioner which is sufficient to justify the deterrent effect which we have concluded these disclosures may well have on the free exercise by petitioner's members of their constitutionally protected right of association. * * * Such a ' * * * subordinating interest of the State must be compelling', Sweezy v. New Hampshire, 354 U.S. 234, 265 [77 S.Ct. 1203, 1219, 1 L.Ed.2d 1311] (concurring opinion). It is not of moment that the State has here acted solely through its judicial branch, for whether legislative or judicial, it is still the application of state power which we are asked to scrutinize."

When we are dealing with "such highly sensitive areas as freedom of speech or press, freedom of political association, and freedom of communication of ideas" (Sweezy v. State of New Hampshire, 354 U.S. 234, 245, 77 S.Ct. 1203, 1209, 1 L.Ed.2d 1311 (1957)), any governmental encroachment is suspect. As the Supreme Court said in Thomas v. Collins, 323 U.S. 516, 530, 65 S.Ct. 315, 89 L.Ed. 430 (1945): " * * * it is the character of the right, not of the limitation, which determines what standard governs the choice".

In Sweezy v. State of New Hampshire, supra, the Supreme Court considered the effect on the educational process of an investigation of "subversive activities" in teaching. The Court noted its concern as to the "inhibiting effect in the flow of democratic expression and controversy upon those directly affected and those touched more subtly * * *" (354 U.S. at p. 248, 77 S.Ct. at p. 1210) and continued:

> "The State Supreme Court thus conceded without extended discussion that petitioner's right to lecture and his right to associate with others were constitutionally protected freedoms which had been abridged through this investigation. These conclusions could not be seriously debated. Merely to summon a witness and compel him, against his will, to disclose the nature of his past expressions and associations is a measure of governmental interference in these matters. These are rights which are safeguarded by the Bill of Rights and the Fourteenth Amendment. We believe that there unquestionably was an invasion of petitioner's liberties in the areas of academic freedom and political expression—areas in which government should be extremely reticent to tread. The essentiality of freedom in the community of American universities is almost self-evident. No one should underestimate the vital role in a democracy that is played by those who guide and train our youth. * * *" (at pp. 249–250, 77 S.Ct. at p. 1211).

See also Winters v. People of the State of New York, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1948); Schneider v. State of New Jersey, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939).

The protection of the attorney-client relationship is a matter of similar great concern and any interest the government might have in disclosure by attorneys of information with respect to activities of the type engaged in by Plaintiffs must be equally compelling. Even civilly this statute is enforceably by injunction with the attendant contempt citation for violation, as was the case in Sweezy v. State of New Hampshire, supra. Defendant here has shown no benefit to be derived from requiring disclosure from Plaintiffs who are conceded to have at all times been acting openly.

A statute as vague as this one is certainly a problem. As Professor Freund said:

> "In order not to chill conduct within the protection of the Constitution and having a genuine social utility, it may be necessary to throw the matter of protection beyond the constitutional periphery, where the statute does not make the boundary clear. The public interest in freedom of expression may serve to invalidate an overbroad statute that casts a cloud on expression both within and without the constitutional boundary."

Freund, The Supreme Court and Civil Liberties, 4 Vand.L.Rev. 533, 540 (1951); see also Amsterdam, The Void-For-Vagueness Doctrine in the Supreme Court, 109 U.Pa.L.Rev. 67, 81 (1960).

Other constitutional considerations are also involved in this case. Certainly clients are adverse to having any phase of their relationship with their attorneys disclosed. If an actual or prospective client were informed that by reason of retaining Plaintiffs any phase of his relationship with Plaintiffs would have to be disclosed in a formal report to the government, viewable by anybody and purchasable for $1.00, such client might well seek other counsel. To do so under this vague statute might well constitute the taking of Plaintiffs' property without due process in violation of the Fifth Amendment to the United States Constitution.

For the reasons stated it is the conclusion of the Court that the Plaintiffs are not required to file reports under Section 203(b) of the Act by reason of any of the facts involved in this case. Accord-

ingly, Plaintiffs' Motion for Summary Judgment will be granted and Defendant's Motion for Summary Judgment will be denied.