226 S.W.3d 825 (2006)
Robert WHITE, Appellant,
v.
ARKANSAS CAPITAL CORPORATION/DIAMOND STATE VENTURES, The City of Fort Smith, Arkansas, Jefferson County Minority Business Owners Association, Richard A. Weiss, Individually and in His Official Capacity as Director of the Arkansas Department of Finance and Administration, Jimmie Lou Fisher, In Her Official Capacity as Arkansas State Treasurer, The Economic Development of Arkansas Fund Commission, and Raymond Heern, Richard L. Mays, Hayes C. McClerkin, Merle F. Peterson, James C. Pledger, Emon Mahoney, Individually and in their Official Capacities as Members of the Economic Development of Arkansas Fund Commission, Appellee.
No. 05-337.
Supreme Court of Arkansas.
February 2, 2006.
*826 Oscar Stilley, Fort Smith, for appellant.
Mike Beebe, Att'y Gen., by: Patricia Van Ausdall Bell, Ass't Att'y Gen., Little Rock, for appellees Gus Wingfield, The Economic Development Fund Commission, Raymon Heern, Richard Mays, Hayes McClerkin, Merle Peterson, James Pledger, and Emon Mahoney.
Rose Law Firm, a Professional Association, by: Stephen N. Joiner, Little Rock, for appellee Arkansas Capital Corporation and Diamond State Ventures.
Jessica C. McGhee and William E. Keadle, Little Rock, for appellee Richard A. Weiss, individually and in his official capacity as Director of the Arkansas Department of Finance and Administration.
ANNABELLE CLINTON IMBER, Justice.
Laura Cullen, on behalf of herself and all other taxpayers similarly situated, filed a lawsuit in Pulaski County Chancery Court[1] to challenge certain appropriation bills adopted by the General Assembly of *827 1997.[2] The first amended complaint was filed August 26, 1999, and named the following defendants: Arkansas State Capital Corporation/Diamond State Ventures; Jefferson County Minority Business Owners Association; Economic Development of Arkansas Fund Commission; City of Fort Smith; Richard Weiss, individually and in his official capacity as Director of the Arkansas Department of Finance and Administration (DF & A); Jimmie Lou Fisher as Treasurer of the State of Arkansas; Raymond Heern, Richard L. Mays, Hays C. McClerkin, Merle F. Peterson, James C. Pledger, and Emon Mahony, individually and in their official capacities as members of the Economic Development of Arkansas Fund Commission (hereinafter referred to as Appellees), and Bill J. Blankenship, Robert J. Jones, John Kincannon, Albert E. Qualls, Bobby G. Wood, and Sally Kibler, individually and in their official capacities as members of the Commission on Institutional and Community Development, and the Commission on Institutional and Community Development.[3] The complaint alleged in relevant part:
 The Economic Development of Arkansas Fund Commission, established pursuant to Ark.Code Ann. § 26-59-122 and Ark.Code Ann. § 19-6-472, is a flagrant attempt to bypass the constitutional requirement that no money be drawn from the treasury except by specific appropriation, as required by Arkansas Constitution Article 5, Section 29, and the constitutional requirement that all appropriations save the general appropriation bill be made by separate bill, each embracing but one subject, as required by Arkansas Constitution Article 5, Section 30.
 The Arkansas General Assembly unlawfully delegated its constitutional authority to appropriate money by the enactment of Ark.Code Ann. § 26-59-122, Ark.Code Ann. § 19-6-472, and Act 413 of 1997, which appropriated $15,000,000 to the DF & A disbursing officer to be payable from the Economic Development of Arkansas Fund, for economic development and enhancement in the State of Arkansas.
 Pursuant to the claimed authority of Act 413 of 1997, the DF & A, by and through its director Richard Weiss, paid over to Arkansas Capital Corporation/Diamond State Ventures the sum of $300,000 out of the State Treasury, as a grant of taxpayers' dollars. Within the grant application by Arkansas Capital Corporation, the principals thereof declared that all of the corporation assets would be paid over to the Arkansas Treasury in the event of dissolution. By appropriating public monies to Arkansas Capital Corporation, a private, for profit corporation, and by making the State of Arkansas financially interested in that corporation, the General Assembly violated Article 12, Section 7 of the Arkansas Constitution.
 Act 413 of 1997 is illegal because it is in essence a grant of state money to Richard Weiss and the members of the Economic Development of Arkansas Fund Commission with disbursement to unidentified persons or entities left to their discretion.
 Article 16, Section 3 of the Arkansas Constitution provides penalties for the *828 use of public monies for any purpose not authorized by law.
 The payment of money to Arkansas Capital Corporation, made pursuant to an unconstitutional delegation of the Arkansas General Assembly's constitutional authority to appropriate money, constitutes an illegal exaction from the named Plaintiff and all other Arkansas taxpayers. The court should therefore order said monies returned to the State Treasury.
 Jefferson County Minority Business Owners Association applied for and received the sum of $250,000 from the Economic Development of Arkansas Fund.
 The disbursement of funds to Jefferson County Minority Business Owners Association constitutes a flagrant attempt to bypass the constitutional requirement that no money be drawn from the treasury except by specific appropriation, as required by Arkansas Constitution Article 5, Section 29, and the constitutional requirement that all appropriations save the general appropriation bill be made by separate bill, each embracing but one subject, as required by Arkansas Constitution Article 5, Section 30.
 The payment of money to Jefferson County Minority Business Owners Association, made pursuant to an unconstitutional delegation of Arkansas General Assembly's constitutional authority to appropriate money, constitutes an illegal exaction from the named Plaintiff and all other Arkansas taxpayers. The court should therefore order said monies returned to the State Treasury.
 The Economic Development of Arkansas Fund Commission and DF & A Director Richard Weiss, together with the State Treasurer, have under the auspices of Act 413 of 1997, and pursuant to warrant number 0272383, paid out to the City of Fort Smith the sum of $500,000, for certain infrastructure improvements within said city.
 No specific appropriation of these funds was made by the Arkansas General Assembly; rather, the General Assembly, as previously stated herein, sought to impermissibly delegate the powers of specific appropriation to certain individuals and groups of individuals.
 In addition to the lack of specific appropriation, such a grant to a specific city would also constitute a special and local act and appropriation, in violation of Amendment 14 to the Arkansas Constitution. The payment of said funds therefore constitutes an illegal exaction from the named Plaintiff and all other Arkansas taxpayers.
 The Economic Development of Arkansas Fund Commission, DF & A Director Richard Weiss, and Jimmie Lou Fisher, Treasurer, under the auspices of Act 672 of 1997 have also paid out undetermined sums of money to the City of Fort Smith, believed to amount to millions of dollars, for the construction of a Civic/Convention Center in said city. On information and belief, additional millions will be spent and paid out unless Plaintiff obtains an injunction against same.
 The payment of said money for a Civic/Convention Center in the City of Fort Smith was made without any specific appropriation, and appropriation for any such purpose, if made, would constitute local and special legislation prohibited by Amendment 14 to the Arkansas Constitution.
In sum, Appellant challenges the constitutionality of Acts 413 and 672 of 1997, and argues all appropriations made thereunder constitute illegal exactions.
*829 After the first amended complaint was filed in 1999 and Appellees responded separately, there was little or no action in the case until December 13, 2002, when the circuit court notified the parties that the case would be dismissed for want of prosecution unless application was made to continue the case. Upon the request of Appellant's counsel, the court agreed to continue the case by order dated January 27, 2003. Still, no action was taken in the case, and on March 17, 2004, the circuit court again notified the parties that the case would be dismissed for want of prosecution. Appellant's counsel again requested that the case be continued. The court entered an order on March 29, 2004, setting the matter for trial on May 20, 2004. Motions for summary judgment were then promptly filed by all of the parties. The circuit court determined that no material issues of fact remained in the lawsuit and entered an order dismissing the lawsuit on December 3, 2004.
In the order, the circuit court noted that no request for injunctive relief had been presented to the court since the lawsuit was originally filed in 1999. The court determined that Appellees Arkansas Capital Corporation, Jefferson County Minority Business Owners Association and Fort Smith all acted in good faith and followed the law, which is presumed to be valid, in making applications for grants from the Economic Development of Arkansas Fund Commission. The court further noted that the grants were considered and awarded in 1998 and 1999, and that the funds contained in the grants had already been spent and were no longer maintained by the recipients. Thus, the court concluded that the claims against the recipients were moot and dismissed the claims with prejudice. The court also found, on the basis of an affidavit filed by Appellee Arkansas Capital Corporation, that the State had no interest in that corporation.
Moreover, based on Appellant's failure to develop his argument that the appropriation to Appellee Fort Smith constituted local legislation in violation of Amendment 14 to the Arkansas Constitution, the circuit court determined that this claim had been withdrawn. The court further concluded that claims against Richard Weiss, in his official capacity, and the Economic Development of Arkansas Fund Commission and its members were moot because the money had already been disbursed.[4] Furthermore, effective January 1, 2002, the commission was abolished pursuant to Act 1681 of 2001. Finally, the court dismissed the claims against Appellee Richard Weiss in his individual capacity, determining that there was no evidence he acted in any way other than in his official capacity. Appellant filed a timely notice of appeal. As he is challenging the validity of statutes enacted by the Arkansas General Assembly, our jurisdiction is appropriate pursuant to Ark. Sup.Ct. R. 1-2(b)(6) (2005).
On appeal, Appellant raises six points of error: (1) the circuit court erred in finding that good faith or a rebutted presumption of validity constitutes a valid basis for summary judgment in an illegal-exaction case; (2) the circuit court erred in finding that an affidavit that is legally insufficient to establish all or part of a claim for summary judgment must be rebutted, or else summary judgment will be entered; (3) the circuit court erred in denying his motion for summary judgment against Appellees Arkansas Capital Corporation/Diamond State Ventures for violation of Article 12, Section 7 of the Arkansas *830 Constitution; (4) the circuit court erred in failing to enter an order of summary judgment declaring Act 413 of 1997 illegal and commanding Appellees to repay funds to the state treasury, commensurate with the amounts received pursuant to Act 413 of 1997; (5) the circuit court erred in failing to enter an order of summary judgment commanding Appellee Fort Smith to repay $9.5 million to the state treasury, for violation of the single-subject rule and for other violations of constitutional provisions; and (6) the circuit court erred in dismissing the claim against Appellee Richard Weiss, for having used public funds for a purpose not authorized by law. We need only address the first point because, even if the appropriations were deemed to be unconstitutional, no remedy exists at this time and thus Appellant's claims are moot.
Article 16, Section 13 of the Arkansas Constitution grants the citizens of Arkansas standing to pursue an illegal-exaction claim. An illegal exaction is defined as any exaction that either is not authorized by law or is contrary to law. Munson v. Abbott, 269 Ark. 441, 602 S.W.2d 649 (1980). Two types of illegal-exaction cases can arise under Article 16, Section 13: "public funds" cases, where the plaintiff contends that public funds generated from tax dollars are being misapplied or illegally spent, and "illegal-tax" cases, where the plaintiff asserts that the tax itself is illegal. McGhee v. Ark. State Bd. of Collection Agencies, 360 Ark. 363, 201 S.W.3d 375 (2005). In the instant case, Appellant argues that because the acts were unconstitutional, the appropriations were misappropriations of public funds. According to the first amended complaint filed on August 26, 1999, he sought injunctive relief and restitution from the parties receiving the appropriations. The circuit court, however, determined that his claims were moot for lack of remedy. A case is moot when any judgment rendered would have no practical, legal effect upon a then-existing legal controversy. Ark. Gas Consumers, Inc. v. Ark. Pub. Serv. Comm'n, 354 Ark. 37, 118 S.W.3d 109 (2003).
For his first point of error, Appellant argues the circuit court erred in considering the good faith of Appellees because illegal-exaction claims are not subject to defenses of good faith. In support of this proposition, he cites Munson v. Abbott, 269 Ark. 441, 602 S.W.2d 649 (1980). The appellees in Munson had challenged payments made to Lee Munson, Prosecuting Attorney for the Sixth Judicial District. While we did not require repayment of the bulk of the expenses, we did sustain the trial court's finding that certain out-of-district expenses required justification as office expenses and were not properly documented. Despite the prosecutor's claim of good faith, this court upheld the trial court's judgment ordering repayment. Id. at 450, 602 S.W.2d at 655. It is true that, generally speaking, we have allowed the remedy of reimbursement despite a claim of good faith. See, e.g., Massongill v. County of Scott, 337 Ark. 281, 991 S.W.2d 105 (1999); Looper v. Thrash, 334 Ark. 212, 972 S.W.2d 250 (1998); Hartwick v. Thorne, 300 Ark. 502, 780 S.W.2d 531 (1989); Munson v. Abbott, supra; but see Martindale v. Honey, 261 Ark. 708, 551 S.W.2d 202 (1977); Starnes v. Sadler, 237 Ark. 325, 372 S.W.2d 585 (1963). In each of these "public funds" cases, however, the funds were misappropriated because of an improper interpretation or application of an otherwise constitutional law. In the instant case, Appellant is not challenging the public officials' interpretation of the law; rather, he is challenging the constitutionality of the law itself.
*831 The question of whether a defendant can escape liability for good-faith actions pursuant to a statute later declared to be unconstitutional has not been conclusively answered in Arkansas. Appellees cite the case of White v. Williams, 192 Ark. 41, 89 S.W.2d 927 (1936), as support for the proposition that liability should not be imposed. In that case, the Pulaski County Sheriff received money pursuant to a statute for reimbursement of prisoner meals without requiring formal documentation of the expenses. The statute was later declared unconstitutional, but our court refused to require the sheriff to repay the money, stating:
A compliance with said act by appellee and his reliance thereon are circumstances tending to show his good faith in the transactions, and when we consider the state comptroller directed compliance with said act, treating it as valid, it certainly negatives any deliberate intent on appellee's part to ignore other statutory directives.
Id. at 43, 89 S.W.2d at 928. We have explicitly adopted a similar rule in the criminal context, holding that a good-faith exception extends to police who act in objectively reasonable reliance on a statute, even though the statute is later held unconstitutional. See, e.g., Feland v. State, 355 Ark. 573, 142 S.W.3d 631 (2004).
Other jurisdictions have adopted the rule that penalties should not be imposed on private parties for acts done in accordance with a law valid at the time the acts were performed but later held unconstitutional. See, e.g., Shreve v. Western Coach Corp., 112 Ariz. 215, 540 P.2d 687 (1975); Downs v. Jacobs, 272 A.2d 706 (Del.Super.Ct.1970). In Shreve, the Arizona Supreme Court stated:
At common law, a declaration of unconstitutionality had complete retroactive effect. Thus it was said that an unconstitutional law `confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed.' (citations omitted). This Blackstonian view, based on the theory that judges discover, rather than make the law, has been considerably eroded with time, and is not the law in Arizona.
Id. at 216-17, 540 P.2d at 688-89. The court then quoted an earlier decision where it stated:
[I]t would be the height of injustice for the state to penalize, either by criminal process or civil action, one of its citizens for obeying a law which on its face was adopted in a constitutional manner, but which was, after such obedience by the citizen, held to be unconstitutional.
Id. (citing Texas Co. v. State, 31 Ariz. 485, 254 P. 1060 (1927)). Finally, the Arizona court noted:
The reasons for adhering to the view that citizens are entitled to rely upon an enactment of the legislature until repealed or declared unconstitutional are as cogent today as in 1927 when the Texas Co. case was decided. However desirable the total nullity doctrine of Norton may be from the standpoint of symmetrical jurisprudence it does not conform to reality. For a statute, until legislatively or judicially excised, is an operative fact which cannot be ignored. The court presumes every legislative act constitutional and indulges in every intendment in favor of its validity. No penalties should be visited upon the citizenry for doing likewise.
Id. (citing Austin v. Campbell, 91 Ariz. 195, 370 P.2d 769 (1962))(internal citations omitted).
The logic of the Arizona appellate court is compelling. We presume *832 statutes to be constitutional, and should not punish state officials or citizens of Arkansas for doing likewise. As in White, Appellees in this case acted in good faith, relying on legislative acts presumed to be valid. Restitution is therefore not a proper remedy in this case. While injunctive relief to prohibit further disbursement of funds might have been available to Appellant in the event the appropriation statutes were held unconstitutional, such relief is no longer available in this case. Mackey v. McDonald, 255 Ark. 978, 504 S.W.2d 726 (1974). In the five-year span between the filing of the lawsuit and the resulting order by the circuit court, the Economic Development of Arkansas Fund Commission was abolished in 2002, and all monies appropriated through the Commission were spent. Thus, as neither injunctive relief nor restitution are proper remedies at this time, the claims by Appellant are moot and the circuit court did not err in so ruling.
Affirmed.
NOTES
[1] By virtue of Amendment 80 to the Arkansas Constitution, which became effective on July 1, 2001, our state courts are no longer chancery and circuit courts. These courts have merged and now carry the designation of "circuit court." Perkins v. Cedar Mountain Sewer Imp. Dist. No. 43 of Garland County, 360 Ark. 50, 199 S.W.3d 667 (2004).
[2] Robert White became an additional party plaintiff in November 2000, and the circuit court granted Laura Cullen's request to be relieved and discharged of her duties as plaintiff in the case on February 26, 2002.
[3] On June 8, 2004, the circuit court granted Appellant's motion to dismiss the action against the Commission on Institutional and Community Development and the members of that commission.
[4] The order also notes Appellant admitted in open court that the claims against Treasurer Gus Wingfield and the members of the Economic Development of Arkansas Fund Commission, in their individual and official capacities, were moot.