Otis CAMPBELL, on behalf of himself and all others similarly situated, Appellant

v.

ASBURY AUTOMOTIVE, INC.; Asbury Automotive Arkansas, L.L.C.; North Point Auto Group; North Point Ford, Inc.; NP FLM, L.L.C.; Prestige Toy, L.L.C.; Prestige Bay, L.L.C.; Premier NSN, L.L.C.; NP VKW, L.L.C.; Premier Pon, L.L.C.; and NP MZD, L.L.C., Appellees.

No. 10–575.

Supreme Court of Arkansas.

April 14, 2011.

Rehearing Denied May 19, 2011.

·Nichols & Campbell, P.A., by: H. Gregory Campbell; Roberts Law Firm, P.A., Little Rock, by: Michael L. Roberts and Richard Quintus; and Varnell & Warwick, P.A., by: Brian W. Warwick, for appellants.

Watts, Donovan & Tilley, P.A., by: David M. Donocan and Staci Dumas Carson; and Williams & Anderson, PLC, Little Rock, by: Philip E. Kaplan and Bonnie J. Johnson, for appellees.

Mitchell, Blackstone, Barnes & Sneddon, P.L.L.C., Little Rock, by: Michael W. Mitchell and Emily Sneddon, for amicus curiae Arkansas Automobile Dealers Association.

PAUL E. DANIELSON, Justice.

$|_1$Appellant Otis Campbell, on behalf of himself and all others similarly situated, appeals from several orders of the circuit court in a class-action suit against appellees Asbury Automotive Group, Inc.; Asbury Automotive Arkansas, L.L.C.; North Point Auto Group; North Point Ford, Inc.; NP FLM, L.L.C.; Prestige Toy, L.L.C.; Prestige Bay, L.L.C.; Premier NSN, L.L.C.; NP VKW, L.L.C.; Premier PON, L.L.C.; and NP MZD, L.L.C. (collectively, "Asbury"). This court previously affirmed the circuit court's grant of class certifica-

tion in relation to a documentary fee charged by Asbury to purchasers of its vehicles. *See Asbury Auto. Grp., Inc. v. Palasack,* 366 Ark. 601, 237 S.W.3d 462 (2006). In this appeal, Campbell asserts four points: (1) that the circuit court erred in granting summary judgment to Asbury on the class's documentary-fee claim based on the Arkansas Deceptive Trade Practices Act ("ADTPA"); (2) that the circuit court erred in denying the class's motion to amend his complaint and motion for class certification to add a breach-of-fiduciary-duty claim relating to the documentary fee; (3) that the circuit court erred in denying class certification relating to the class's financing-fee claim against Asbury; and (4) that the circuit court erred in dismissing the class's unjust-enrichment claim relating to the documentary fee. Asbury cross-appeals, asserting three points: (1) that the circuit court erred in granting summary judgment to Campbell on the class's claim that the assessment of a documentary fee constituted the unauthorized practice of law; (2) that the circuit court erred in ruling that Asbury had a fiduciary relationship with its customers; and (3) that the circuit court erred in ruling that it was not entitled to the defense of good-faith reliance on Act 1600 of 2001. We affirm in part and reverse and remand in part on direct appeal, and we affirm on cross-appeal.

On December 31, 2002, Charles and Carol Palasack filed a class-action complaint against Asbury, in which they alleged that Asbury "charged Plaintiffs and other similarly situated members of the Plaintiff class, an illegal document preparation fee for preparing the vehicle installment contract (a legal instrument) for the purchase of a vehicle." The Palasacks asserted that the fee itself was illegal, constituting the unauthorized practice of law, and that the retention of the fee violated the ADTPA, codified at Arkansas Code Annotated §§ 4–88–101 to –804 (Repl.2001 & Supp. 2009), resulting in unjust enrichment. The circuit court granted class certification and defined the class as follows:

> All persons that paid Defendants in Arkansas a documentary fee or administrative fee since December 31, 1997. Excluded from this class are: (1) present and former employees, officers, and directors of Defendants, and (2) any class member who timely elects to be excluded from the class pending further orders of the Court.

Asbury appealed, and this court affirmed, as already noted.[1] *See Palasack, supra.*

In the ensuing litigation, both parties filed motions for summary judgment, and on November 30, 2006, the circuit court granted summary judgment to Campbell, ruling that the documentary fee charged by Asbury "includes compensation for time spent preparing or filling in the blanks on legal documents and therefore constitutes the unauthorized practice of law and is illegal." In addition, it found that "[t]o the extent Ark.Code Ann. § 23–112–315 and § 23–112–612 authorize car dealers to prepare documents affecting the legal rights of others for a fee, it is unconstitutional because it violates the separation of powers doctrine." Accordingly, the circuit court also granted Campbell's motion for summary judgment

> on the issue of whether the Documentary Fee compensates Defendants for time

---

1. Campbell was added as a class representative in an amended complaint filed July 22, 2003. The Palasacks were voluntarily nonsuited, and their individual claims were dismissed without prejudice, by order of the circuit court on September 29, 2008; the circuit court, in a later order, granted Campbell's motion to dismiss the Palasacks' claims and dismissed their claims with prejudice.

spent preparing or filling in the blanks of legal documents, constitutes the unauthorized practice of law and therefore violates the Arkansas Deceptive Trade Practices Act ... as to the time periods prior to the effective dates of the challenged statutes (August 2001) and dates subsequent to November 21, 2006 should Defendants continue collecting the Document Preparation Fee.

With respect to Asbury, the circuit court granted its motion for summary judgment for immunity from liability, based on the defense of good-faith reliance, "as to the protected time periods between the effective date of the statute until November 21, 2006." It also granted Asbury's motion on Campbell's claim for unjust enrichment.

On September 28, 2007, Campbell moved to certify a subclass of the litigation. In the motion, Campbell asserted his previous allegation that Asbury "engaged in a deceptive business practice of receiving hidden fees pursuant to Defendants' agreements with third-party lenders." Campbell's motion asserted that

> [t]he undisputed evidence is that Defendants arrange the financing for the customer on the sale or lease of a motor vehicle through third-party lenders. These lenders approve the customer for financing based upon the customer's credit history and establish the interest rate and other terms upon which the customer is approved. Defendants then mark up the approved customer rate and insert a higher rate into the retail installment contract which Defendants prepare for pay. The difference between the customer approved rate and the actual rate Defendants use in the retail installment contract is the Finance Fee that is kicked back to the dealership from the lender.

He averred that the subclass had a "claim for damages for the difference between the customer approved rate and the actual rate the Defendants insert in the retail installment contract they are paid to prepare" and that each of the required elements of Arkansas Rule of Civil Procedure 23 was satisfied. However, on February 12, 2008, the circuit court denied the motion to certify the subclass, finding a lack of typicality, predominance, and superiority. In addition, by order of March 6, 2008, the circuit court rescinded its prior ruling finding Asbury immune from liability, based on the defense of good-faith reliance, from the effective date of the document-fee statutes until November 21, 2006, based on this court's decision in *Arkansas Board of Collection Agencies v. McGhee*, 372 Ark. 136, 271 S.W.3d 512 (2008).

On July 25, 2008, Asbury filed another motion for summary judgment, asserting that it was entitled to summary judgment on Campbell's ADTPA/documentary-fee claim based on a recent decision by this court, *Preston v. Stoops*, 373 Ark. 591, 285 S.W.3d 606 (2008). It contended that in *Stoops* this court held that the ADTPA did not apply to the practice of law, "and, thus, does not apply to claims grounded in the unauthorized practice of law." The circuit court agreed, and, on October 28, 2008, in a letter opinion, reversed its prior rulings and granted Asbury's motion.[2]

On November 4, 2008, Campbell filed a third amended complaint, incorporating amended and second amended complaints that had been filed and asserting that Asbury "breached the fiduciary duties the law imposes upon Defendants." The circuit court, in its order of April 6, 2009, granted a motion by Campbell requesting the circuit court to determine questions of law regarding the legal duty imposed on nonlawyers engaged in the unauthorized practice of law. Campbell subsequently

---

**2.** That decision was later memorialized in the circuit court's order of April 6, 2009.

filed a motion for class certification on his breach-of-fiduciary-duty claim relating to the documentary fee. However, in its order of February 21, 2010, the circuit court denied class certification, finding that, while the requirements of Rule 23 were met, the doctrine of one-way intervention precluded certification or the addition of a claim to an existing class after ruling on the merits.

On March 11, 2010, the circuit court issued a Rule 54(b) final order and judgment with certification, in which it made the requisite findings of Ark. R. Civ. P. 54(b). The same day, Campbell filed his notice of appeal. On March 18, 2010, Asbury moved the circuit court to modify its final order and judgment, and the circuit court did so, stating,

> Based on all of the Court's rulings in this case to date, summary judgment is granted to Defendants on all claims of the class. All claims of the class are hereby dismissed with prejudice. Pursuant to Rule 54(b)(1), based on all of the Court's rulings to date, the Court directs the entry of Final Judgment on all claims of the class. The Court's Final Order and Judgment was not intended to limit the appeal rights of any party, including Defendants, as to any of the Court's previous rulings on the claims of the class. Furthermore it is not the Court's intent to reverse or set aside any ruling made as of March 11, 2010 as addressed in Plaintiffs' response to the Defendants' Rule 60 motion.

Asbury then filed its notice of cross-appeal, both parties subsequently filed amended notices, and both parties now appeal.

### I. *Direct Appeal*

#### A. Arkansas Deceptive Trade Practices Act

For his first point on appeal, Campbell argues that the circuit court erred in granting Asbury summary judgment on the class's ADTPA claim involving the documentary fee. He contends that the circuit court's reliance on this court's decision in *Preston v. Stoops,* 373 Ark. 591, 285 S.W.3d 606 (2008), was misplaced, claiming that decision merely held that the ADTPA cannot regulate an attorney's conduct and did not hold that the legislature cannot prohibit nonlawyer corporations from providing legal services. He urges this court to limit *Stoops* to the conduct of licensed attorneys and to hold that it does not render the ADTPA inapplicable to car dealers and nonlawyer corporations rendering legal services.

Asbury responds that the circuit court correctly interpreted *Stoops,* arguing that the ADTPA does not provide a private right of action for the unauthorized practice of law. It claims that only this court may regulate the practice of law, authorized or unauthorized, and, therefore, the General Assembly may not create a statutory cause of action, such as under the ADTPA, for the unauthorized practice of law.

The law is well settled that summary judgment is to be granted by a circuit court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *See Couch v. Farmers Ins. Co., Inc.,* 375 Ark. 255, 289 S.W.3d 909 (2008). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *See id.* On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact

unanswered. *See id.* We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *See id.* Our review focuses not only on the pleadings, but also on the affidavits and documents filed by the parties. *See id.* At issue here is whether our *Stoops* decision precludes the General Assembly from creating any cause of action dealing with the unauthorized practice of law by a nonlawyer. It does not.

In *Stoops*, the Estate of the Prestons sued their former attorneys from an Oklahoma law firm (collectively, "Stoops"), alleging a violation of the ADTPA and breach of the covenant of good faith and fair dealing. The action stemmed from Mr. Preston's prior medical-malpractice suit that was dismissed with prejudice due to Stoops's failure to be licensed as an attorney in Arkansas. Stoops sought summary judgment on the basis that the ADTPA did not apply to the practice of law, and the circuit court agreed, treating the motion as one to dismiss. We affirmed, stating,

> Stoops undertook legal representation of the Prestons when Stoops was not authorized to practice law in Arkansas. Thus, the unauthorized practice of law is at issue. The unauthorized practice of law falls within this court's constitutional authority to control and govern the practice of law. *See, e.g., Am. Abstract & Title Co. v. Rice*, 358 Ark. 1, 186 S.W.3d 705 (2004). The suggestion that the practice of law can be regulated by an act of the General Assembly is without merit. Oversight and control of the practice of law is under the exclusive authority of the judiciary. Under Ark. Const. amend. 28, "The Supreme Court shall make rules regulating the practice of law and the professional conduct of attorneys at law." That responsibility

could not be discharged if it were dependent upon or controlled by statutes enacted by the General Assembly. *See In re Supreme Court License Fees*, 251 Ark. 800, 483 S.W.2d 174 (1972). Further, any action by the General Assembly to control the practice of law would be a violation of the separation-of-powers doctrine. *See* Ark. Const. art. 4, §§ 1 & 2. We affirm the circuit court's finding that the ADTPA does not apply to the practice of law.

*Stoops*, 373 Ark. at 593–94, 285 S.W.3d at 609. *Stoops* thus stands for the proposition that the unauthorized practice of law is not cognizable under the ADTPA, where an *attorney* not licensed in Arkansas attempts to practice law in Arkansas. *See also Clarendon America Ins. Co. v. Hickok*, 370 Ark. 41, 257 S.W.3d 43 (2007) (holding that an attorney licensed in Texas, but not in Arkansas, engaged in the unauthorized practice of law by filing notices of appeal in Arkansas without first complying with Rule XIV of the Arkansas Rules Governing Admission to the Bar).

That being said, this court has also recognized another facet of the unauthorized practice of law—the attempt to practice law by a nonlawyer. *See, e.g., Beach Abstract & Guar. Co. v. Bar Ass'n of Arkansas*, 230 Ark. 494, 326 S.W.2d 900 (1959). This is the type of unauthorized practice of law alleged by Campbell, and we must determine whether the General Assembly is precluded from creating a cause of action for the unauthorized practice of law by a nonlawyer, such as under the ADTPA. We hold that it is not.

Amendment 28 of the Arkansas Constitution provides that "[t]he Supreme Court shall make rules regulating the practice of law and the professional conduct of attorneys at law," and this court has recognized that amendment 28 "put to

rest for all time any possible question about the power of the courts to regulate the practice of law in the state." *McKenzie v. Burris*, 255 Ark. 330, 341, 500 S.W.2d 357, 364 (1973). We have also recognized, however, that "[s]tatutes which provide a penalty for unauthorized practice of law by a nonresident of the forum state have been held to be cumulative to the powers of the courts to punish." *Id.* at 342, 500 S.W.2d at 365. Statutes relating to the practice of law are merely in aid of, but do not supersede or detract from the power of the judicial department to define, regulate, and control the practice of law, and the legislative branch may not, in any way, hinder, interfere with, restrict, or frustrate the powers of the courts. *See id.* Moreover, we have "chosen to recognize and apply certain statutes which are not necessarily inconsistent with, or repugnant to, court rules, and do not hinder, interfere with, frustrate, pre-empt or usurp judicial powers, at least when the statutes were, at the time of enactment, clearly within the province of the legislative branch and when the courts have not acted in the particular matter covered by the statute." *Id.* at 343, 500 S.W.2d at 365.

Based on the foregoing, it is clear that neither *Stoops* nor amendment 28 has foreclosed any and all legislative foray into the unauthorized practice of law *by a nonlawyer*, such as under the ADTPA, despite Asbury's contention to the contrary. There can be no doubt that the power of the judicial department, acting through this court to regulate the practice of law, is "exclusive and supreme" under amendment 28. *McKenzie*, 255 Ark. at 341, 500 S.W.2d at 364. Yet, nonlawyers engaging in what we exclusively define as the practice of law are currently beyond its purview for purposes of meaningful sanction.[3] Therefore, we hold that, where the General Assembly has seen fit to provide a cause of action when warranted for such activity by a nonlawyer, such as under the ADTPA, neither *Stoops* nor amendment 28 precludes such action, as long as the legislation in no way hinders, interferes with, restricts, or frustrates the powers of the judiciary to define, regulate, and control the practice of law. We, therefore, reverse the circuit court's grant of summary judgment on this issue and remand.

## B. Breach of Fiduciary Duty

For his next point on appeal, Campbell argues that the circuit court erred in denying his attempt to amend his complaint and motion for class certification

---

**3.** While this court does have a committee that was created to deal with the unauthorized practice of law, we have observed that the rules creating the Supreme Court Committee on the Unauthorized Practice of Law (CUPL) make it plain that, although the Committee is vested with the authority to investigate claims relating to the unauthorized practice of law, the CUPL itself has no power to enforce whatever decision it may reach regarding any given investigation. *See American Abstract & Title Co. v. Rice*, 358 Ark. 1, 186 S.W.3d 705 (2004).

> Plainly, the CUPL is without either the authority or the ability to take any affirmative action on its own—other than issuing a nonbinding advisory opinion—to see to it that a party ceases engaging in the unauthorized practice of law. Without this ability to enforce its own rules, the Committee clearly cannot be vested with *exclusive* jurisdiction to consider allegations that a person or entity has engaged in the unauthorized practice of law. In other words, CUPL does not have the authority to enforce its opinions without filing a complaint in circuit court, where it can obtain a declaration finding a person is unlawfully practicing law and an injunction to force that person to stop the unauthorized practice. The CUPL, at most, shares jurisdiction in these matters; most certainly, the Committee does not have *exclusive* authority in these matters.

*Id.* at 7, 186 S.W.3d at 708 (emphasis in original).

to add a breach-of-fiduciary-duty claim relating to the documentary fee assessed by Asbury. He contends that class-certification orders are conditional and may always be amended prior to final judgment. In addition, he avers, the doctrine of one-way intervention, which the circuit court found applicable, has no application here, where class membership has already been determined and class members have already been bound by all judgments thereafter.

Asbury responds that the doctrine of one-way intervention prevented the circuit court from certifying a class on the breach-of-fiduciary-duty claim because the circuit court had already decided the merits of some class claims. It further claims that the circuit court did not err because this court has previously held, in *Farm Bureau Policy Holders v. Farm Bureau Mutual Insurance Co. of Arkansas*, 335 Ark. 285, 984 S.W.2d 6 (1998), that an amendment to a class-action complaint made after class certification was untimely.

Rule 15 of the Arkansas Rules of Civil Procedure provides that a party may amend its pleadings at any time without leave of the court, but if, upon motion of an opposing party, the court determines that prejudice would result, the court may strike the amended pleading. *See* Ark. R. Civ. P. 15(a) (2008). We will not reverse a circuit court's decision allowing or denying amendments to pleadings absent a manifest abuse of discretion. *See Neal v. Sparks Reg'l Med. Ctr.*, 375 Ark. 46, 289 S.W.3d 8 (2008). Moreover, circuit courts are given broad discretion in matters regarding class certification, and this court will not reverse a circuit court's decision to grant or deny class certification absent an abuse of discretion. *See Beverly Enters.-Arkansas, Inc. v. Thomas*, 370 Ark. 310, 259 S.W.3d 445 (2007).

Here, Campbell sought to amend his complaint and filed a third amended complaint on November 4, 2008, almost six years after the initial complaint and almost two years after receiving summary judgment on the class's unauthorized-practice-of-law claim. Furthermore, the circuit court had already granted Asbury summary judgment on the class's unjust-enrichment claim and had just entered a letter opinion granting Asbury summary judgment on the class's ADTPA claim.

In addition, we have previously affirmed a circuit court's strike of a second amended complaint, which alleged a new claim after class certification and was filed little more than one year after the initial complaint. *See Farm Bureau, supra.* In *Farm Bureau*, the appellant argued that the circuit court erred where

> the same facts are present that initially warranted class certification, the amendment to the complaint does not add new parties, the class notice informed all class members of both claims set out in the second amended complaint, and because of the time between the amendment and the trial, the amendment did not prejudice the auto carriers. He concludes that where it is clear that a post-certification claim does not disturb the integrity of the court's certification, the new claim should be allowed.

335 Ark. at 299, 984 S.W.2d at 13. However, this court disagreed, holding that the circuit court's ruling was well reasoned:

> What bothered the trial judge concerns us also, and that is whether amending a complaint after class certification would lead to a successive appeal to this court. We can easily see how permitting a new issue to be raised after class certification might well lead the auto carriers to file a second interlocutory appeal contesting the new issue.

*Id.*, 984 S.W.2d at 13. We then affirmed the circuit court's ruling "that the issues to

be tried must be limited to those raised before class certification." *Id.* at 300, 984 S.W.2d at 13.

Likewise, in this case, we cannot say that the circuit court erred. While Campbell argues that our *Farm Bureau* decision is no longer controlling due to changes made to Rule 23 since that decision, his argument is not well taken. Indeed, the rule was modified by this court in 2006 to provide that a circuit court has the power to modify certification "at any time before the court enters final judgment." Ark. R. Civ. P. 23, addition to reptr. nn., 2006 amend. (2010). However, prior to that change, and at the time *Farm Bureau* was decided, the circuit court was permitted to modify certification "before the decision on the merits." *Id.* Notwithstanding that provision, this court held in *Farm Bureau* that permitting a new issue postcertification might lead to a successive interlocutory appeal challenging class certification. That possibility still exists today, even with the 2006 amendment to Rule 23. Thus, *Farm Bureau* remains apposite and warrants our affirming the circuit court.

■■■■ But as an additional basis for this decision, we note that a circuit court has the inherent power to maintain an orderly administration of justice. *See Nameloc, Inc. v. Jack, Lyon & Jones, P.A.,* 362 Ark. 175, 208 S.W.3d 129 (2005). The circuit court has a duty to maintain order in the proceedings. *See id.* For all of the foregoing reasons, we hold that the circuit court did not abuse its discretion in disallowing the class's breach-of-fiduciary-duty claim.

### C. Class Certification of the Financing–Fee Claim

For his third point on appeal, Campbell argues that the circuit court erred in denying class certification on his financing-fee claim. Specifically, he claims that the circuit court erred in finding that the requirements of typicality, predominance, and superiority were lacking. Asbury counters that the circuit court did not err in refusing to certify a subclass on the financing-fee claim.

■■■■ Rule 23 of the Arkansas Rules of Civil Procedure governs class actions and provides, in pertinent part:

(a) *Prerequisites to Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties and their counsel will fairly and adequately protect the interests of the class.

1(b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. At an early practicable time after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. For purposes of this subdivision, "practicable" means reasonably capable of being accomplished. An order under this section may be altered or amended at any time before the court enters final judgment. An order certifying a class action must define the class and the class claims, issues, or defenses.

Ark. R. Civ. P. 23(a), (b) (2007). Our law is well settled that the six requirements for class-action certification include (1) numerosity, (2) commonality, (3) typicality, (4) adequacy, (5) predominance, and (6) superiority. *See General Motors Corp. v. Bryant*, 374 Ark. 38, 285 S.W.3d 634 (2008). This court will not reverse a circuit court's ruling on class certification absent an abuse of discretion. *See id.* In reviewing a circuit court's class-certification order, "this court focuses on the evidence in the record to determine whether it supports the trial court's conclusion regarding certification." *Id.* at 42, 285 S.W.3d at 638 (quoting *Carquest of Hot Springs, Inc. v. General Parts, Inc.*, 367 Ark. 218, 223, 238 S.W.3d 916, 919 (2006)). We have held that "neither the trial court nor the appellate court may delve into the merits of the underlying claim in determining whether the elements of Rule 23 have been satisfied." *Id.*, 285 S.W.3d at 638 (quoting *Carquest, supra*). Our court has said on this point that "a trial court may not consider whether the plaintiffs will ultimately prevail, or even whether they have a cause of action." *Id.*, 285 S.W.3d at 638 (quoting *Carquest, supra*). We, thus, view the propriety of a class action as a procedural question. *See id.*

### 1. Typicality

First, Campbell asserts that the circuit court erred in finding that typicality was lacking, as the class alleged the same unlawful course of conduct: "concealment and nondisclosure of material facts relating to Asbury's normal business practice of arranging financing for its customers and inserting in the loan documents . . . a higher interest rate than the interest rate approved by the lender." He contends that this same unlawful conduct was directed at or affected both him and the class sought to be certified. Asbury, however, asserts that Campbell's claim is not typical of the class. It urges that because it had different agreements or arrangements with different lenders and because a dealership may have earned compensation on some financed purchases, but not others, individual trials would be necessary, and class certification is inappropriate.

This court has long held that the typicality requirement is satisfied if the representative's claim arises from the same common wrong alleged against the members of the class. *See Simpson Housing Solutions, LLC v. Hernandez*, 2009 Ark. 480, 347 S.W.3d 1. Relying on Newberg's treatise on class actions, we have observed that

> [t]ypicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. In other words, when such a relationship is shown, a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff. Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory. When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims.

*Summons v. Missouri Pac. R.R.*, 306 Ark. 116, 121, 813 S.W.2d 240, 243 (1991) (quoting Herbert B. Newberg, *Newberg on Class Actions* § 3.13 (2d ed.1985) (footnotes omitted)). Our case law is clear that the essence of the typicality requirement is the conduct of the defendants and not the

varying fact patterns and degree of injury or damage to individual class members. *See Teris, LLC v. Chandler,* 375 Ark. 70, 289 S.W.3d 63 (2008).

Here, the circuit court did not specify its basis for finding a lack of typicality. However, it is clear to this court that typicality is not lacking. It is alleged, in essence, that Asbury's dealerships, in attempting to sell vehicles, arranged financing by which buyers were approved at one rate, yet a higher rate was inserted into the retail installment contract. It was further alleged that the actions taken in doing so were without any disclosure to the buyer that he or she had been approved at a lower rate or that the dealership would receive an incentive for doing so from the lender. While Asbury focuses on varying after-the-fact matters, such as the individual lenders and the different incentives received from each lender, those considerations are simply irrelevant for purposes of determining typicality. As already set forth, our focus is on the defendant's conduct; here, it is alleged that the same unlawful conduct affected both Campbell and the members of the proposed subclass—i.e., that, while arranging financing wherein each member was approved for a lower interest rate, Asbury instead inserted a higher rate into the loan documents without disclosure to the buyer. Typicality is therefore present, and we hold that the circuit court abused its discretion in finding a lack of typicality.

### 2. Predominance

Campbell further argues that the circuit court erred in finding a lack of predominance. He contends that the common questions that predominate in the instant case "are whether Asbury failed to disclose material and relevant facts and information relative to their standard business practice of arranging financing for customers, and if there was a failure, whether Asbury breached its fiduciary duties constituting a deceptive business practice under the ADTPA." Asbury counters that, unlike the documentary fee that was uniformly charged to all customers, its dealerships may or may not have received compensation for assisting in financing, and this may or may not have been disclosed to customers, thereby necessitating individual trials and precluding a finding of predominance.

We have held that the starting point in examining the issue of predominance is whether a common wrong has been alleged against the defendant. *See General Motors Corp.,* 374 Ark. 38, 285 S.W.3d 634. If a case involves preliminary, common issues of liability and wrongdoing that affect all class members, the predominance requirement of Rule 23 is satisfied even if the circuit court must subsequently determine individual damage issues in bifurcated proceedings. *See id.* We have recognized that a bifurcated process of certifying a class to resolve preliminary, common issues and then decertifying the class to resolve individual issues, such as damages, is consistent with Rule 23. *See id.* In addition, we have said that

> [t]he predominance element can be satisfied if the preliminary, common issues may be resolved before any individual issues. In making this determination, we do not merely compare the number of individual versus common claims. Instead, we must decide if the issues common to all plaintiffs "predominate over" the individual issues, which can be resolved during the decertified stage of bifurcated proceedings.

*ChartOne, Inc. v. Raglon,* 373 Ark. 275, 286, 283 S.W.3d 576, 584 (2008) (quoting *Georgia–Pacific Corp. v. Carter,* 371 Ark. 295, 301, 265 S.W.3d 107, 111 (2007)). The question then is whether there are pre-

dominating questions that can be answered before individualized ones.

Whether Asbury's dealerships engaged in a practice whereby buyers were approved at one rate of interest, but given another, higher rate of interest, for which the dealerships received an incentive, and whether those facts were concealed from the buyers are predominating questions. Any individual issues, such as the various lending entities and their respective incentive agreements with Asbury, may go to the right of any individual class member to recover, but the common questions of whether Asbury's dealerships engaged in such a practice and whether it should have disclosed that practice pertain to the whole class and can be decided before reaching any of the individual issues. *See, e.g., Simpson Housing Solutions, LLC, supra.* Accordingly, we hold that the circuit court abused its discretion in finding predominance lacking.

### 3. *Superiority*

■ The circuit court further found that superiority was lacking. Campbell urges that this finding was error because "the number of claims involved as well as the low dollar amount involved makes a class action superior because it will avoid a multitude of small individual claims." Asbury, on the other hand, argues that the circuit court did not err, because "[a] multitude of individual trials would be necessary here to determine the disclosures, the terms of the contract, and whether the dealership received any compensation on any particular transaction," thereby destroying superiority.

■ We have repeatedly held that the superiority requirement is satisfied if class certification is the more efficient way of handling the case, and it is fair to both sides. *See Johnson's Sales Co. v. Harris,* 370 Ark. 387, 260 S.W.3d 273 (2007). Where a cohesive and manageable class exists, we have held that real efficiency can be had if common, predominating questions of law or fact are first decided, with cases then splintering for the trial of individual issues, if necessary. *See id.* This court has further stated that when a circuit court is determining whether class-action status is the superior method for adjudication of a matter, it may be necessary for the circuit court to evaluate the manageability of the class. *See id.* Furthermore, the avoidance of multiple suits lies at the heart of any class action. *See id.*

As already set forth above, common issues predominate over individual ones here and can be answered first, thereby making a class action in this case more efficient, or superior, to multiple individual trials. While Asbury attempts to defeat superiority by claiming a need for individual determinations, such determinations can be made after the common issues have been decided, as our case law makes clear. Finally, we have held that proceeding as a class action is fair to both sides. *See, e.g., ChartOne, Inc.,* 373 Ark. 275, 283 S.W.3d 576. Each side can present evidence regarding the predominating questions of whether Asbury engaged in the alleged conduct and whether it was required to disclose its actions. For these reasons, we hold that the circuit court abused its discretion in finding a lack of superiority, and we reverse and remand on this point.

### D. Unjust Enrichment

■ For his final point on appeal, Campbell contends that the circuit court erroneously granted summary judgment to Asbury on the class's unjust-enrichment claim on the basis that because there was a contract between the parties, unjust enrichment did not apply. He maintains that

the true rule is that, even if there is a valid contract, a plaintiff can, and should, recover for unjust enrichment where a corporation charges an unlawful fee regardless of the existence of a contract. Asbury maintains that there simply can be no claim for unjust enrichment when the parties have a contract. It further avers that none of the exceptions to that general rule, such as rescission, discharge by impossibility or frustration of purpose, or fundamental mistake, have any application in the instant case.

As set forth earlier in this opinion, the law is well settled that summary judgment is to be granted by a circuit court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *See Couch,* 375 Ark. 255, 289 S.W.3d 909. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *See id.* On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *See id.* We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *See id.* Our review focuses not only on the pleadings, but also on the affidavits and documents filed by the parties. *See id.*

To find unjust enrichment, a party must have received something of value, to which he or she is not entitled and which he or she must restore. *See El Paso Prod. Co. v. Blanchard,* 371 Ark. 634, 269 S.W.3d 362 (2007). There must also be some operative act, intent, or situation to make the enrichment unjust and com-

pensable. *See id.* One who is free from fault cannot be held to be unjustly enriched merely because he or she has chosen to exercise a legal or contractual right. *See id.* In short, an action based on unjust enrichment is maintainable where a person has received money or its equivalent under such circumstances that, in equity and good conscience, he or she ought not to retain. *See id.* Further, in *Pro-Comp Management, Inc. v. R.K. Enterprises, LLC,* we stated:

> Unjust enrichment is an equitable doctrine. *First Nat'l Bank of DeWitt v. Cruthis,* 360 Ark. 528, 203 S.W.3d 88 (2005). It is the principle that one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly.

366 Ark. 463, 469, 237 S.W.3d 20, 24 (2006).

Here, Asbury sought summary judgment on the basis that an express contract existed and precluded restitution under a theory of unjust enrichment, and the circuit court granted Asbury's motion. This court has, in fact, observed that "[t]here can be no 'unjust enrichment' in contract cases." *Lowell Perkins Agency, Inc. v. Jacobs,* 250 Ark. 952, 958, 469 S.W.2d 89, 92 (1971). However, there are exceptions to that rule.

In *Friends of Children, Inc. v. Marcus,* our court of appeals observed,

> In reversing the trial judge's award of restitution the supreme court stated [in *Jacobs, supra* ], "There can be no 'unjust enrichment' in contract cases." It is clear, however, that the court recognized its statement merely as a general rule:

"It is generally held that where there is an express contract the law will not imply a quasi or constructive contract." *Jacobs*, 250 Ark. at 959 [469 S.W.2d 89] (quoting 17 C.J.S. *Contracts* § 6 at 574). The mere fact that there is a contract between the parties does not prevent the grant of restitution in an appropriate case. Appropriate cases include those in which there has been a rescission at law, *see, e.g., Maumelle Co. v. Eskola*, 315 Ark. 25, 865 S.W.2d 272 (1993); where a contract has been discharged by impossibility or frustration of purpose, 1 George E. Palmer, *The Law of Restitution* § 1.7 at 42 (1978); or where the parties to a contract find they have made some fundamental mistake about something important in their contract. *Dobbs, supra*, § 4.3 at 256.

46 Ark.App. 57, 61, 876 S.W.2d 603, 605 (1994). Likewise, the Eighth Circuit Court of Appeals, in *United States v. Applied Pharmacy Consultants, Inc.*, 182 F.3d 603 (8th Cir.1999), found an exception, after looking to the common law of Arkansas for a rule of decision.

There, the United States sought to recover Medicare payments that were claimed to be in excess of the value of medical devices actually furnished by Applied. While the United States had proceeded to trial on the basis of a Civil False Claims Act claim, the jury answered "no" to that interrogatory, and the matter was submitted to the district court on a theory of unjust enrichment. Despite Applied's argument that the existence of a contract was a legal bar precluding relief under a theory of unjust enrichment, the Eighth Circuit affirmed the district court's award for unjust enrichment. The court observed,

> We must remember that the rules of the common law, especially rules which concern forms of pleading, should never be taken beyond the reason which gave them birth. The reason for the rule that someone with an express contract is not allowed to proceed on an unjust-enrichment theory, is that such a person has no need of such a proceeding, and, moreover, that such a person should not be allowed by means of such a proceeding to recover anything more or different from what the contract provides for. Here, that reason does not apply, and therefore the rule should not apply. *Cessante ratione, cessat ipsa lex.* When the reason for the rule ceases, the rule itself ceases to apply. No injustice whatsoever is done to Applied by this result. Indeed, it would be a gross injustice to the United States to apply woodenly the technical rule on which Applied relies on this appeal.

182 F.3d at 609. In addition, Howard W. Brill, in his treatise, states that "[a]n express contract cannot be circumvented by unjust enrichment"; however, "when an express contract does not exist, is void, or does not provide an answer, these alternative theories may be asserted." 1 Howard W. Brill, *Arkansas Law of Damages* § 31:2 (5th ed.2010).

A review of the foregoing makes clear that the mere existence of a contract between the parties does not automatically foreclose a claim of unjust enrichment. "[W]hen an express contract does not fully address a subject, a court of equity may impose a remedy to further the ends of justice." *Klein v. Arkoma Prod. Co.*, 73 F.3d 779, 786 (8th Cir.1996) (citing *Roberson Enters., Inc. v. Miller Land & Lumber Co.*, 287 Ark. 422, 700 S.W.2d 57, 59 (1985)). *See also* 42 C.J.S. *Implied Contracts* § 39 (2011) ("Also, the existence of a contract, in itself, does not preclude equitable relief which is not inconsistent with the contract."). Here, the circuit court based its grant of summary judg-

ment solely on the fact that a contract existed between the parties. Because the mere existence of a contract does not always foreclose a claim of unjust enrichment, we hold that the circuit court erred in granting summary judgment and reverse and remand.

## II. *Cross–Appeal*

### A. Unauthorized Practice of Law

■ Asbury, for its first point on cross-appeal, argues that the circuit court erred in granting summary judgment to Campbell on the class's unauthorized-practice-of-law claim. It asserts that its completion of standardized forms, necessary to the purchase of motor vehicles, did not require the training, skill, or judgment of an attorney and was not the practice of law. It avers that it did not hold itself out as providing legal services and did not give legal advice or counsel. It further states that the public benefited by its completion of the forms and that its charging of a separate fee did not transform completion of the forms into the practice of law.

Campbell responds that the class was properly granted summary judgment because "Asbury's typical, ordinary, and standard practice is that it selects the legal documents used in each transaction, completes the legal documents, reviews and explains the documents to the customer, and generates millions of dollars in revenue for this service." He further asserts that this court's prior decisions clearly prohibit nonlawyer corporations from preparing legal documents for pay, and, for this reason, the circuit court's grant of summary judgment should be affirmed. Having already set forth our standard of review for summary judgment, we turn then to whether the completion of certain forms by Asbury for a fee constituted the unauthorized practice of law. We hold that it did.

The practice of law by a corporation is prohibited by Ark.Code Ann. § 16–22–211 (Repl.1999), which provides, in pertinent part:

> (a) It shall be unlawful for any corporation or voluntary association to practice or appear as an attorney at law for any person in any court in this state or before any judicial body, to make it a business to practice as an attorney at law for any person in any of the courts, to hold itself out to the public as being entitled to practice law, to tender or furnish legal services or advice, to furnish attorneys or counsel, to render legal services of any kind in actions or proceedings of any nature or in any other way or manner, or in any other manner to assume to be entitled to practice law or to assume or advertise the title of lawyer or attorney, attorney at law, or equivalent terms in any language in such a manner as to convey the impression that it is entitled to practice law or to furnish legal advice, service, or counsel or to advertise that either alone or together with or by or through any person, whether a duly and regularly admitted attorney at law or not, it has, owns, conducts, or maintains a law office or any office for the practice of law, or for furnishing legal advice, services, or counsel.

Likewise, this court has observed that "[c]orporations shall not practice law." *Arkansas Bar Ass'n v. Union Nat'l Bank*, 224 Ark. 48, 53, 273 S.W.2d 408, 411 (1954) (quoting *People ex rel. Committee on Grievances of the Colorado Bar Ass'n v. Denver Clearing House Banks*, 99 Colo. 50, 54, 59 P.2d 468, 470 (1936)). *See also Brown v. Kelton*, 2011 Ark. 93, 380 S.W.3d 361 (holding that Ark.Code Ann. § 16–22–211 was constitutional and did not conflict with this court's exclusive power to regulate the practice of law).

With regard to the practice of law, this court has noted that "[i]t is uniformly held that many activities, such as writing and interpreting wills, contracts, trust agreements and the giving of legal advice in general, constitute practicing law."[4] *Union Nat'l Bank* at 54, 273 |₂₆S.W.2d at 412. In *Arkansas Bar Ass'n v. Block*, 230 Ark. 430, 323 S.W.2d 912 (1959), *overruled in part by Creekmore v. Izard*, 236 Ark. 558, 367 S.W.2d 419 (1963), we held that the completion "by filling in the blank spaces" of "standardized and approved prepared forms of" instruments constituted the practice of law and included warranty deeds; disclaimer deeds; quitclaim deeds; joint tenancy deeds; options; easements; loan applications; promissory notes; real estate mortgages; deeds of trust; assignments of leases or rentals; contracts of sale of real estate; releases and satisfactions of real estate mortgages; agreements for the sale of real estate; bills of sale; contracts of sale; mortgages; pledges of personal property; notices and declarations of forfeiture; notices requiring strict compliance; releases and discharges of mechanic's and materialmen's liens; printed forms approved by attorneys, including the various forms furnished by title insurance companies to real estate brokers for use by them as agents of title insurance companies; actions as closing agent for mortgage loans and completion by filling in the blanks therein with factual data such instruments as are furnished to brokers and are necessary, incidental, and ancillary to the closing of the transaction between the mortgagee for whom they act as agent and the mortgagor; and leases. In that same vein, this court held, in *Beach Abstract & Guaranty Co. v. Bar Ass'n of Arkansas*, 230 Ark. 494, 326 S.W.2d 900 (1959), that title examination and curative work, when done for another, constituted the |₂₇practice of law in its strictest sense.[5]

4. We have further recognized that

> when one appears before a court of record for the purpose of transacting business with the court in connection with any pending litigation or when any person seeks to invoke the processes of the court in any matter pending before it, that person is engaging in the practice of law.... Therefore anyone who assumes the role of assisting the court in its process or invokes the use of its mechanism is considered to be engaged in the practice of law.

*Union Nat'l Bank*, 224 Ark. at 53, 273 S.W.2d at 411.

5. In *Beach Abstract*, the chancellor found that the appellants had engaged in the following activities:

> The defendant companies, and each of them, acting by and through persons employed by them, in connection with the conduct of their several businesses and in connection with transactions in which the said companies, as such, have no direct interest, have been and are regularly and continuously drafting some or all of the instruments and performing some or all of the functions for their numerous clients, patrons and customers as hereinafter enumerated, to wit:
>
> (a) Drafting and preparation of warranty deeds, disclaimer deeds and quitclaim deeds.
>
> (b) Drafting and preparation of promissory notes, real estate mortgages, real estate purchase contracts and related instruments.
>
> (c) Drafting and preparation of forms of agreement for the sale of real estate, chattels, and choses in action.
>
> (d) Drafting and preparation of mortgages and pledges of personal property.
>
> (e) Drafting and preparation of forms of conveyances naming husband and wife as grantees.
>
> (f) Drafting and preparation of bills of assurance, dedication instruments, and tract and sub-division restrictions.
>
> (g) Drafting and preparation of escrow instructions, setting forth agreements between buyers and sellers, and the rights and liabilities of buyers and sellers.
>
> (h) Drafting and preparation of affidavits of completion of improvements, affidavits of marital status and heirship, and various and sundry additional forms of affidavits

Notwithstanding those holdings, this court, in *Creekmore v. Izard*, 236 Ark. 558, 367 S.W.2d 419 (1963), modified its decision in *Block*

to provide that a real estate broker, when the person for whom he is acting has declined to employ a lawyer to prepare the necessary instruments and has authorized the real estate broker to do so, may be permitted to fill in the blanks in simple printed standardized real estate forms, which forms must be approved by a lawyer; it being understood that these forms shall not be used for other than simple real estate transactions which arise in the usual course of the broker's business and that such forms shall be used only in connection with real estate transactions actually handled by such brokers as a broker and then without charge for the simple service of filling in the blanks.

236 Ark. at 565, 367 S.W.2d at 423. It did so, recognizing public convenience as a factor in its decision. *See id.* In *Pope County Bar Ass'n, Inc. v. Suggs*, 274 Ark. 250, 624 S.W.2d 828 (1981), this court again held that it was in the public interest to permit the limited, outside use of standard, printed forms "in connection with simple real estate transactions, provided they had been previously prepared by a lawyer" and provided:

(1) That the person for whom the broker is acting has declined to employ a lawyer to prepare the necessary instruments and has authorized the broker to do so; and

(2) That the forms are approved by a lawyer either before or after the blanks are filled in but prior to delivery to the

person for whom the broker is acting; and

(3) That the forms shall not be used for other than simple real estate transactions which arise in the usual course of the broker's business; and

(4) That the forms shall be used only in connection with real estate transactions actually handled by such brokers as a broker; and

(5) That the broker shall make no charge for filling in the blanks; and

(6) That the broker shall not give advice or opinions as to the legal rights of the parties, as to the legal effects of instruments to accomplish specific purposes or as to the validity of title to real estate.

274 Ark. at 252–53, 624 S.W.2d at 829. The court noted that, standing alone, the completion of the forms at issue fell readily within the practice of law; but more importantly, even when examined in the context of the restrictions set forth, the court regarded "the use and preparation of these instruments as so indigenous to the practice of law that it would be illogical to say they are not." *Id.* at 256, 624 S.W.2d at 831. Nonetheless, the court permitted the use of the forms under the restrictions it set forth. *See id.*

While we are cognizant of the fact that the forms at issue in this case do not involve real-estate matters, it is clear to this court that the restrictions set forth in *Suggs* have equal application to the forms used in the motor-vehicle-sales business. Asbury admits that the forms are legally binding,[6] but avers that such business

---

and other instruments to remove clouds and perfect titles.

230 Ark. at 496–97, 326 S.W.2d at 901.

**6.** In its November 30, 2006 order, the circuit court found that the following forms used by

Asbury were legal documents that affected the legal rights of the consumer: (1) a retail buyer's order; (2) the credit sale disclosure statement; (3) the truth-in-lending statement; (4) the bill of sale; and (5) the purchaser's order. It further found that the following were legal

dealings are common and simply incidental to the motor-vehicle-dealer business. While that may be true, this court has taken such argument into account and has remained steadfast, as in *Creekmore* and *Suggs,* that the completion of forms legal in nature by nonlawyers, while ordinarily the practice of law, may be permitted, but only within very certain, specific parameters. Accordingly, Asbury was likewise permitted to complete the forms at issue, but was required to do so within the parameters set by this court in *Creekmore* and *Suggs,* which would include (1) that the person for whom Asbury was acting declined to employ a lawyer to prepare the necessary instruments and authorized Asbury to do so; (2) that the forms were approved by a lawyer either before or after the blanks were filled in, but prior to delivery to the person for whom Asbury was acting; (3) that the forms were not used for other than simple retail transactions, which arose in the usual course of Asbury's business; (4) that the forms were used only in connection with motor-vehicle-sale transactions actually handled by Asbury as a motor-vehicle[30] dealer; (5) that Asbury did not charge for filling in the blanks; and (6) that Asbury did not give advice or opinions as to the legal rights of the parties, as to the legal effects of instruments to accomplish specific purposes, or as to the validity of the contract. If it did not act within the parameters of *Suggs* and *Creekmore,* Asbury engaged in the unauthorized practice of law.

The question is, then, did Asbury comply with those requirements? The record in this case makes clear that it did not. Indeed, Asbury does not dispute that it charged a documentary fee, nor does it deny that the fee was charged for the filling in of forms. In fact, in its response to Campbell's cross-motion for summary judgment, Asbury plainly states that it was charging a fee for the act of completing or filling in forms:

The completion of routine, standardized forms necessary to sell a motor vehicle to a retail customer and the charging of an administrative fee to that customer is not the practice of law and is not a deceptive trade practice. While the forms at issue may or may not have some legal significance, Defendants are not practicing law by filling in blanks or charging a fee for what includes services in addition to the completion of certain forms.

. . . .

Defendants are not posing as lawyers and are not purporting to practice law. They are filling in routine, standardized forms to sell cars to the public.

. . . .

Defendants charge the administrative fee to all customers.

. . . .

The paperwork is standard, pre-printed, and routine for each sales transaction. Defendants are selling motor vehicles. By completing these forms, they are not holding [31]themselves out as lawyers or practicing law.

Defendants charge an administrative fee. The administrative fee includes, among other things, the completion of these documents.

Here, it is abundantly clear that Asbury charged a documentary fee in relation to

documents in its subsequent order of February 12, 2008: (1) a power of attorney; (2) a warranty contract; (3) a motor-vehicle-lease agreement; (4) a rider amending a sales contract; (5) a promissory note; and (6) a letter of permission. Asbury does not challenge either finding by the circuit court.

its completion of legal forms.[7] Because it did so, the circuit court was correct in finding that Asbury engaged in the unauthorized practice of law, in contravention of this court's decisions in *Creekmore* and *Suggs*. For this reason, we hold that the circuit court did not err in granting summary judgment to Campbell.

### B. Finding of a Fiduciary Relationship

 Asbury argues, for its second point on cross-appeal, that the circuit court erred in finding that car dealers that prepare or complete legal documents are held to the same standards as a licensed attorney. Specifically, it claims that the unauthorized practice of law in no way creates a fiduciary relationship. Asbury maintains, instead, that it is the circumstances of the interaction between one engaged in the unauthorized practice of law and a "client" that form the nature of the duties that arise.

Campbell responds that Asbury must be held to have had the same fiduciary duties as an attorney when it engaged in the unauthorized practice of law, because to hold a nonlawyer corporation to any lower standard would condone and encourage the unauthorized practice |₃₂of law. He urges that Arkansas law makes clear that attorneys are required to meet the standards of full disclosure, fair dealing, good faith, honesty, and loyalty, and they are strictly prohibited from representing opposing or conflicting interests; these same duties, he asserts, applied to Asbury when it engaged in the same conduct as attorneys.

 Asbury challenges the circuit court's grant of Campbell's motion, which requested the circuit court to determine questions of law regarding the duties imposed on nonlawyers engaged in the unauthorized practice of law. This court reviews questions of law de novo. *See McCourt Mfg. Corp. v. Rycroft*, 2010 Ark. 93, 360 S.W.3d 138. Here, the circuit granted Campbell's motion requesting the following determinations of law:

1. Car dealers that prepare or complete legal documents for pay are held to the same standard as a licensed attorney.

. . . .

2. Because car dealers that prepare or complete legal documents for pay are held to the same standard as a licensed attorney, they are required to meet the requisite standards of full disclosure, fair dealing, good faith, honesty and loyalty.

. . . .

3. Because car dealers that prepare or complete legal documents for pay are held to the same standard as a licensed attorney, they are prohibited from representing opposing or conflicting interests.

. . . .

4. Car dealers that prepare or complete legal documents for pay, and that represent opposing or conflicting interests, are barred from receiving a fee, no matter how successful their labors.

. . . .

5. Car dealers that prepare or complete legal documents for pay are prohibited from arguing or proving that in fact their conflict of loyalties had no influence upon their conduct.

 The question presented is whether, in being held to the same stan-

---

7. Asbury also argues that prohibiting it from filling in blanks on routine agreements would unduly hamper commerce and harm the public. However, our case law in no way prohibits Asbury from completing such forms for the benefit of its customers; it simply prohibits Asbury from charging a fee for doing so.

dards as a licensed attorney, Asbury stood in a fiduciary relationship with its consumers, and we conclude that it did. A person is ordinarily not liable for the acts of another unless a special relationship exists between the two parties. *See Cherepski v. Walker,* 323 Ark. 43, 913 S.W.2d 761 (1996). A person standing in a fiduciary relationship with another is subject to liability to the other for harm resulting from a breach of the duty imposed by the relationship. *See id.* It follows that, regardless of the express terms of an agreement, a fiduciary may be held liable for conduct that does not meet the requisite standards of fair dealing, good faith, honesty, and loyalty. *See Cole v. Laws,* 349 Ark. 177, 76 S.W.3d 878 (2002). The guiding principle of the fiduciary relationship is that self-dealing, absent the consent of the other party to the relationship, is strictly proscribed. *See id.*

As already set forth, Asbury engaged in the unauthorized practice of law when it completed legal forms for its customers and charged a fee for doing so. This court has previously held that the standard of care to be applied to one who improperly assumes the function of a lawyer shall be, at a minimum, no less than that required of a licensed attorney. *See Wright v. Langdon,* 274 Ark. 258, 623 S.W.2d 823 (1981). We have further held that a fiduciary relationship exists between attorney and client, and the confidence that the relationship begets between the parties makes it necessary for the attorney to act in utmost good faith. *See Allen v. Allison,* 356 Ark. 403, 155 S.W.3d 682 (2004). Here, Asbury, by virtue of its unauthorized practice of law, was held to the same standard of care as a licensed attorney,

and that would include having a fiduciary relationship with its customers. Accordingly, we cannot say that the circuit court erred in so concluding.

## C. Good–Faith Reliance

For its final point on cross-appeal, Asbury argues that the circuit court erred in ruling that it was not entitled to rely on the defense of good-faith reliance on Act 1600 of 2001.[8] Asbury contends that the circuit court erroneously relied upon this court's decision in *Arkansas Board of Collection Agencies v. McGhee,* 372 Ark. 136, 271 S.W.3d 512 (2008), which it claims is inapposite and does not preclude its reliance on the doctrine of good-faith reliance established in *White v. Arkansas Capital Corp./Diamond State Ventures,* 365 Ark. 200, 226 S.W.3d 825 (2006). Asbury maintains that there was no longstanding policy in Arkansas prohibiting Arkansas car dealers from charging documentary fees. Campbell disputes Asbury's claim of good-faith reliance and argues that it must be summarily rejected because Asbury began charging the documentary fee well in advance of the statutes authorizing such a fee. He further asserts that under Arkansas law, a party exacting an illegal fee pursuant to a statute that is later deemed unconstitutional is not entitled to immunity, but must return the illegal charge to the person that paid it. He maintains that the public policy of Arkansas has long prohibited corporations from preparing legal documents for pay. Finally, he claims that *White, supra,* is inapplicable.

At issue is whether Asbury was entitled to rely on the defense of good-faith reliance to Campbell's claim that it engaged

---

8. Specifically, Asbury relied on Act 1600 of 2001, which amended Title 23, Chapter 112, to add §§ 23–112–315 and 23–112–612, permitting motor-vehicle dealers and used-motor-vehicle dealers, respectively, to charge a documentary fee and required them to disclose such a fee as an itemized charge. Both statutes were since repealed by Act 366 of 2007, §§ 3 and 4.

in the unauthorized practice of law. As noted, the circuit court ruled that it was not. This was a ruling of law, which this court reviews de novo. *See Rycroft, supra.*

Here, the circuit court in its order concluded that this court's decision in *McGhee, supra,* limited the language in *White, supra.* In *White,* this court found compelling the Arizona Supreme Court's logic "that citizens are entitled to rely upon an enactment of the legislature until repealed or declared unconstitutional." *White,* 365 Ark. at 208, 226 S.W.3d at 831 (quoting *Shreve v. Western Coach Corp.,* 112 Ariz. 215, 217, 540 P.2d 687, 689 (1975)). Noting our presumption that statutes are constitutional, we held that our state officials and citizens should not be punished for doing the same. *See id.*

We turn, then, to *McGhee, supra,* relied on by the circuit court to rescind its prior ruling based on *White.* There, a surety company claimed that it was not liable for purposes of a bond it issued on behalf of a check-casher because it relied on the Arkansas Check–Cashers Act. *See McGhee, supra.* We rejected that argument, however, stating,

> We do not view that Act as affording Old Republic blanket protection for purposes of the 1999 bond. The usury laws of this state, including what constitutes interest or fees, have been part of our constitution, statutory law, and case law for decades. *See* Ark. Const. art. 19, § 13(a); Ark.Code Ann. §§ 4–57–104 to –105 (Repl.2001); *see, e.g., Schuck v. Murdock Acceptance Corp.,* 220 Ark. 56, 247 S.W.2d 1 (1952). It was incumbent upon Old Republic to know and abide by the clear public policy of this state as expressed by the Arkansas people in the Arkansas Constitution regardless of one legislative act (the Check–Cashers Act) that runs counter to that public policy.

Old Republic did not do so, and by this failure, it violated the laws of this state and became liable under the bond.

*McGhee,* 372 Ark. at 147, 271 S.W.3d at 520.

It is clear to this court that these two cases can be read harmoniously. Certainly, statutes are presumed constitutional and citizens should have the right to rely on them in good faith; however, a defendant is not entitled to rely in good faith on a legislative act for protection from liability, where it was incumbent upon that defendant to know and abide by the clear public policy of the state. Here, Asbury claims that "there was no expression of public policy" on the matter. But to the contrary, at the time Asbury was charging its documentary fee, Ark.Code Ann. § 16–22–211, prohibiting corporations from practicing law, and our decisions in *Creekmore, supra,* and *Suggs, supra,* were the standing law in Arkansas and, therefore, the clear public policy of this state. As such, it was incumbent upon Asbury to know and abide by that public policy, regardless of Act 1600 of 2001 that ran counter to that public policy. Accordingly, we hold that the circuit court did not err in ruling that Asbury was not entitled to rely on the defense of good-faith reliance, and we affirm on cross-appeal.

Affirmed in part and reversed and remanded in part on direct appeal; affirmed on cross-appeal.

BROWN, J., dissents in part and concurs in part.

ROBERT L. BROWN, Justice, dissenting.

When this court handed down a per curiam in 1978 to create the Committee on the Unauthorized Practice of Law (CUPL), we said: "The Constitution and laws of this state vest in the Supreme

Court the duty and authority to regulate the practice of law and to prohibit the unauthorized practice of law." *Rule of Court Creating a Comm. on the Unauthorized Practice of Law,* 246 Ark. App'x 960 (1978) (per curiam). What we endorsed by that per curiam was the constitutional principle that this court and this court alone regulates the unauthorized practice of law. *See* Ark. Const. amend. 28 ("The Supreme Court shall make rules regulating the practice of law and the professional conduct of attorneys at law.").

The majority of this court now appears to contradict this court's control over the unauthorized practice of law and our clear holdings that the Arkansas Deceptive Trade Practices Act (ADTPA) does not apply to the practice of law. *See Preston v. Stoops,* 373 Ark. 591, 594, 285 S.W.3d 606, 609 (2008) ("The suggestion that the practice of law can be regulated by an Act of the General Assembly is without merit. . . . We affirm the circuit court's finding that the ADTPA does not apply to the practice of law."); *Born v. Hosto & Buchan, PLLC,* 2010 Ark. 292, 372 S.W.3d 324 (recognizing that *Stoops* involved a claim regarding the unauthorized practice of law and that this court unequivocally said that the ADTPA does not apply to the practice of law).

Now this court is splitting hairs and hedging in my judgment with respect to this court's constitutional power by saying that *Stoops* and *Born* only mean that the ADTPA does not apply to practicing attorneys, but it does apply for nonlawyers engaged in the unauthorized practice of law. In other words, the majority now concludes that practicing attorneys, including out-of-state attorneys unauthorized to practice in Arkansas, shall be regulated solely by this court while nonlawyers engaged in the unauthorized practice shall not be. That distinction not only makes no

sense, but it is constitutionally questionable. When this court regulates the practice of law, that embraces the unauthorized practice of law.

We have made the point clear in prior cases that nonlawyers practicing law are subject to this court's regulation. *See, e.g., Creekmore v. Izard,* 236 Ark. 558, 565, 367 S.W.2d 419, 423–24 (1963) (holding that the preparation of deeds, mortgages, and bills of sale, for a fee, by a notary public clearly constitutes the practice of law and affirming an injunction against that practice); *Pope County Bar Ass'n, Inc. v. Suggs,* 274 Ark. 250, 256, 624 S.W.2d 828, 830–31 (1981) (recognizing that although the preparation of instruments to buy and sell real property by real estate brokers is "so indigenous to the practice of law" that it would be illogical to say it is not the practice of law, it is in the public interest to permit the limited, outside use of standard, printed forms). In *Creekmore,* this court affirmed sanctions in the form of an injunction against a nonlawyer notary public engaged in the practice of law.

Not only did this court establish the Committee on the Unauthorized Practice of Law by rule as part of our constitutional mandate, but we endowed that committee with the power to file complaints for declaratory and injunctive relief in circuit court. *See Rule of Court Creating a Comm. on the Unauthorized Practice of Law,* 264 Ark. App'x at 961. For the majority to now say that the CUPL has no enforcement power and can levy no sanctions is simply not the case. An injunction brought in circuit court against one engaged in the unauthorized practice of law is clearly a sanction which the CUPL sets in motion. The majority cites to a case that makes this clear. *See American Abstract & Title Co. v. Rice,* 358 Ark. 1, 186 S.W.3d 705 (2004). In *Rice,* this court determined that the CUPL had the au-

thority to file a complaint in circuit court, obtain a declaration finding that a person is unlawfully practicing law, and request an injunction to force the person to stop the unauthorized practice of law. *Id.* at 7, 186 S.W.3d at 708. The majority either overlooks this authority or determines that an injunction is not a sanction, which, of course, is untrue. Injunctions are definitely sanctions. *See Black's Law Dictionary* 1369 (8th ed.2004) (defining sanction as a penalty or coercive measure that results from failure to comply with a law, rule, or other order).

What *Stoops* and *Born* manifestly prohibit is a legislative foray into regulating the practice of law via the ADTPA, period. The majority, though, chooses to draw an artificial distinction between an Oklahoma lawyer unauthorized to practice in Arkansas, which was the situation in *Stoops,* and a lay person who attempts to practice law in this state. The client damaged by the unauthorized attorney in *Stoops* had no recourse under the ADTPA. The *Campbell* class, said to be damaged by a nonlawyer in the instant case, does. The majority endorses this disparate outcome despite the fact that there is no legitimate difference as far as the unauthorized practice of law between a lawyer licenced in another state who practices without authorization in Arkansas and a nonlawyer who practices without a license in Arkansas. Both are engaged in the practice of law, which, under amendment 28, falls within the exclusive jurisdiction of this court. The majority's conclusion that "nonlawyers engaging in what we have exclusively defined as the practice of law are currently beyond [the judicial department's] purview for purposes of sanction" does not accord with our precedent, with the actual powers of the Committee on the Unauthorized Practice of Law, or with our constitution.

By today's decision, the court has ceded regulation of the unauthorized practice of law to the General Assembly and essentially washed its hands of its longstanding authority, which, again, has its genesis in the Arkansas Constitution. It is a mistake to do so and will have significant repercussions. Furthermore, our CUPL has been essentially emasculated by today's opinion. The ADTPA was never designed to provide tort relief for the unauthorized practice of law. The majority has now squeezed the unauthorized practice under the ADTPA umbrella and created a private cause of action for these violations. I respectfully dissent on this point.

While I disagree that the ADTPA applies to afford a remedy to the class in this case, I do agree that unjust enrichment and fraud as related to the financing fee are proper remedies for the class to pursue. Moreover, I agree with the remaining conclusions in the majority's opinion. For that reason, I dissent in part and concur in part.